# Leiper *v.* The Baltimore & Philadelphia Railroad Company et al., Appellants.

*Public service corporations—Railroads—Act of July 26, 1913, P. L. 1374—Contracts—Rates—Jurisdiction of Court of Equity—Injunction—Public Service Commission—Jurisdiction.*

1. A Court of Equity has no jurisdiction to restrain a railroad company from charging a shipper a higher rate than that fixed by a contract made in consideration of the grant of the right of way over the shipper's land, where the company is charging the regular freight rates filed with the Public Service Commission, since the shipper's remedy is by application to the Public Service Commission for a reduction of the rate under the provisions of the Public Service Act of January 26, 1913.

*Constitutional law—Impairment of contract—Rate contract—Public Service Corporations—Power of State to regulate rates.*

2. One who enters into a contract with a Public Service Corporation fixing rates is presumed to have done so with knowledge of the right of the State in the exercise of the police power to prescribe different rates.

3. A contract with a public service corporation fixing rates for service, whether for a definite or indefinite period, has no binding force when its terms conflict with the rates fixed in the method prescribed by the Public Service Company Law of July 26, 1913, P. L. 1374.

Argued July 16, 1918. Appeal, No. 166, Jan. T., 1917, by defendants, from decree of C. P. No. 4, Philadelphia Co., March T., 1916, No. 3378, in equity, for plaintiff in case of Callender I. Leiper v. The Baltimore & Philadelphia Railroad Company and the Baltimore & Ohio Railroad Company. Before BROWN, C. J., STEWART, MOSCHZISKER, FRAZER, WALLING, SIMPSON and FOX, JJ. Reversed.

Bill in equity for injunction. Before FINLETTER, J.

The facts appear in the opinion of the Supreme Court.

*Error assigned* inter alia was the decree of the court.

*W. B. Linn,* with him *H. B. Gill,* for appellants.

*Lewis Lawrence Smith,* for appellee.

OPINION BY MR. JUSTICE FOX, October 7, 1918:

Callender I. Leiper, the appellee, filed a bill in equity against the Baltimore & Philadelphia Railroad Company and the Baltimore & Ohio Railroad Company, praying for an injunction restraining the defendants from exceeding the rates specified in a contract made on the fifteenth day of March, 1887, between George M. Lewis, who was then the owner of certain stone quarries on a tract of land in the Township of Springfield, County of Delaware, State of Pennsylvania, and the Baltimore & Philadelphia Railroad Company.

The agreement in question in its second paragraph provided that the parties of the second part, and their successors, would transport in cars to be furnished by them stone of the parties of the first part from the quarries to any point on the line of their railroad between Fairview and the City of Philadelphia, and to all points on the Schuylkill River Railroad and its branches, at a rate of freight not more than forty cents per ton, and that the actual freight to be charged from the said quarries to Philadelphia and to all other points which may be or become competitive shall not exceed competitive rates. There was a further agreement to transport stone from the quarries to the landing on Crum creek for the sum of five cents per ton, or one dollar per twenty-ton car. The company also agreed to transport stone from the quarries to any siding of the company in the City of Chester and in the contiguous boroughs at a charge not exceeding twenty-five cents per ton.

By a conveyance dated the nineteenth of August, 1905, the appellee acquired all the estate, right, title and interest owned by the said George M. Lewis at the time of his death in and to the assets of a partnership formerly ex-

isting between him and the plaintiff, and in and to said quarries, including particularly the rights vested in the said George M. Lewis under the aforesaid agreement dated March 15, 1887, and the appellee thereby became the absolute owner of the quarries as well as the rights arising out of this agreement.

The consideration of the agreement was the grant of a right of way through and over the land appurtenant to the quarries, which, at the time of the agreement, was owned by the said George M. Lewis. The railroad company was also required by a provision of the agreement to locate a station at Avondale. Subsequently the Baltimore & Ohio Railroad Company, the other defendant, acquired by contract of leasing the property of the Baltimore & Philadelphia Railroad Company, and at the time of the filing of the bill was operating said line of railroad. It is conceded that the appellants have kept in every respect the terms and provisions of the agreement until the twenty-second day of February, 1915, when, in pursuance of the terms and provisions of the Public Service Company Law of Pennsylvania, the railroad company, having filed with the Public Service Commission a freight tariff raising the rates in question, claimed that it was entitled to collect from the appellee forty-two cents and twenty-six cents in place of the rate fixed in the agreement, namely, forty cents and twenty-five cents.

The learned judge of the court below finds as a fact that the freight tariff was duly printed, posted and filed according to the Public Service Company Law of Pennsylvania, and became effective February twenty-second, 1915, and that accordingly forty-two cents and twenty-six cents respectively became the lawful rates for the transportation of commodities described in the agreement in question between the points named in said agreement. The appellee made no complaint to the Public Service Commission of Pennsylvania as to the reasonableness of the rate thus fixed in the freight tariff by the railroad company, nor has he made any complaint to the

Public Service Commission setting forth the facts alleged in the bill of complaint filed in this case, nor has he asked for any relief or made any application of any character to the Public Service Commission relating to the facts developed in the case at bar. Notwithstanding this fact the learned judge of the court below held that the defendant was without legal right to require from the plaintiff the payment of the rates fixed in said freight tariff for the transportation of stone, and held that as the rates already paid since February twenty-second, 1915, were paid under protest it was the duty of the defendant to refund to the plaintiffs the excess received by them, with interest thereon. The court further directed that an injunction issue, perpetually restraining the defendant from demanding or exacting from the appellee a higher rate for the transportation of stone within the State of Pennsylvania. Defendants were further commanded to receive and transport stone at the rates fixed in the agreement.

Under these facts has the court jurisdiction to make the decree that was entered in this case? One of the purposes of the passage of the Public Service Law was the creation of a tribunal by which the rates to be charged by public service companies in the State might be established. These rates must be reasonable in amount and must apply equally to all shippers. In the case of Armour Packing Company v. United States, 209 U. S. 56, considering a somewhat similar question, the court said "It cannot be challenged that the great purpose of the act to regulate commerce, whilst seeking to prevent unjust and unreasonable rates, was to secure equality of rates as to all and to destroy favoritism, these last being accomplished by the publication of tariffs, and forbidding rebates, preferences and all other forms of undue discrimination." The language of the Act of 1913, creating the Public Service Commission, in defining its powers, gives the commission much the same powers as the Interstate Commerce Commission under the act of Con-

gress, and the language used by Mr. Justice DAY in the case just quoted applies with equal force to the language of the Act of 1913. To permit the contract made between the appellee and appellants to stand as against rates established in a legal and orderly method and in conformity with the provisions of the law would be to nullify the purposes of the act. It would be impossible for the commission to enforce an equality of reasonable rates, except upon the basis that it is not bound by contracts previously entered into between a public service company and either a municipality, another corporation, or a private individual. The basis upon which this conclusion must rest is that under the Constitution of Pennsylvania, Art. XVI, Sec. 3, it is provided: "The exercise of the police power of the State shall never be abridged or so construed as to permit corporations to conduct their business in such manner as to infringe the equal rights of individuals or the general well-being of the State."

Where the rights of individuals under a contract which would otherwise be perfectly valid are in conflict with the "general well-being of the State," the rights of the individuals must give way to the general welfare. It therefore follows that when, as in this case, the parties enter into a contract with a public service corporation relating to rates, they are presumed to do so with the knowledge that the right of the State to exercise this police power in the future is expressly reserved, and that where the common weal and the interests of the public demand that the provisions of the contract thus entered into shall be modified, it can be done without any violation of the provision of the Constitution of the United States with reference to the impairment of the obligation of contracts.

A public service company is granted its franchise by the State so that it may properly and efficiently serve its people. This grant is made subject to the reserved power of the Commonwealth to supervise and regulate the exercise of the franchise, and in the case of rates, to increase

or decrease them as the public interest, as distinguished from mere private interest, may demand. It was necessary, therefore, to have some tribunal to regulate and determine questions of this character relating to the reasonableness of rates, and the legislature has wisely provided such a tribunal in the Public Service Commission. The fact that the action of the Public Service Commission can by proper proceedings be reviewed by the courts furnishes the appellee with a full opportunity to be properly protected in the enjoyment of his rights. If the rate fixed in his contract is under all the circumstances a proper rate, this can be judicially determined. The fact that no complaint was made to the commission when the change of the rate was filed does not prevent the appellee from subsequently entering a complaint of this character: Art. V, Sec. 4, of the Act of July 26, 1913; Baltimore &- Ohio Railroad Company v. Public Service Commission, 66 Pa. Superior Ct. 403.

The question here presented is not new, but has arisen in a number of cases recently decided by this court in which it is held that, as the law now stands, in cases of this character a court of equity is without the necessary jurisdiction to make a decree.

In case of the St. Clair Borough v. Tamaqua & Pottsville Electric Ry. Co. et al., 259 Pa. 462, this court said:

"Since the Public Service Company Law has been upon our books, we have consistently adhered to the rule that matters within the jurisdiction of the commission must first be determined by it, in every instance, before the courts will adjudge any phase of the controversy (Bethlehem City Water Company v. Bethlehem Boro., No. 2, 253 Pa. 333, 337-8; New Brighton Boro. v. New Brighton Water Co. et al., 247 Pa. 232, 242) ; and it is plain that orderly procedure requires an adherence to this practice, otherwise different phases of the same case might be pending before the commission and the courts at one time, which would cause endless confusion. Under the established system, the commission, in the first instance,

passes upon all changes of rates made by public service corporations, subject to a proper and well-regulated review by the courts, when and where all questions of law may be raised and determined; and this is not so because the courts have any desire to avoid the performance of duties cast upon them by the law, but because the people, speaking through the legislature, have declared that these duties shall be performed by a special tribunal created for the purpose."

In the case of Bellevue Borough v. Ohio Valley Water Company, 245 Pa. 114, the court said:

"If this case in any of its aspects involves the reasonableness or unreasonableness of water rates, it is a sufficient answer to say that the section of the Act of April 29, 1874, P. L. 73, which gave courts the power to determine questions of this character was repealed by the Public Service Company Law, approved July 26, 1913, P. L. 1374. In other words, the legislature took this power away from the courts and conferred it upon the Public Service Commission. Hereafter, so long as the Act of 1913 remains in force, the question of reasonableness of rates established by public service corporations, must in the first instance be submitted to the Public Service Commission when challenged. This is now the declared statutory policy of the law, and it is binding not only upon the interested parties, but upon the courts as well. We do not know that this position is seriously controverted by learned counsel for either side of the present controversy."

The view reaffirmed in the St. Clair case, supra, has been adopted in the late case of Klein-Logan v. Duquesne Light Company, 261 Pa. 526, and in V. & S. Company v. Gaslight Company, 261 Pa. 523. In both these cases the court held that equity was without jurisdiction to enforce a rate contract, and that the application must be made in the first instance to the Public Service Commission.

We feel that the question of the binding effect of a contract such as we have here in controversy upon the jurisdiction of the Public Service Commission is sufficiently relevant to justify its consideration at this time. Some of the earlier cases have suggested a distinction with reference to contracts of this character. This court has held that contracts fixing rates which are for an indeterminate period will not be sustained. This perhaps carries with it the implication that a contract for a determinate or definite time might be sustained, although this has not been definitely decided. We have reached the conclusion that this is a distinction which ought not to be maintained. Where parties enter into a contract which relates to a matter which may subsequently be the subject of revision by the State in the exercise of its police power, their contracts, whether definite or indefinite in point of time, must be held subject to the right of the State to act in regard thereto. They cannot allege that the contracts, so far as the State is concerned, are inviolable. It is not, as we have already pointed out, because of the interest of the parties to the contract, or either of them, that it may be revised or modified, but because of the greater good resulting to the public at large.

In Turtle Creek Borough v. Pennsylvania Water Company, 243 Pa. 415, Mr. Justice ELKIN said:

"In conclusion it may not be improper to remark that these appeals contain many incidental and interesting questions of law, which we do not deem vital to the decision of the present case, and therefore have refrained from discussing or deciding them. These questions will arise under the Act of July 26, 1913, P. L. 1374, known as the Public Service Company Law, and it would be unwise to anticipate their decision at the present time and under the old law."

This case had its inception prior to the passage of the Public Service Company Law, and hence the effect of the Act of 1913 could not be properly considered or deter-

mined. This was followed by an opinion by the same Justice in Borough of Bellevue v. The Ohio Valley Water Company, 245 Pa. 114. In that opinion, in referring to the case of Turtle Creek Borough v. Pennsylvania Water Company, supra, the court said:

"We did not then decide whether a contract between a borough and a water company, for a definite term of years and for specified rates during the limited term, would be enforced as between the parties, because that question was not then raised; and it is not raised now, so that this will be left as an open question until it is presented in concrete form upon facts calling for a decision of the point. We did decide in that case that a contract of this kind, unlimited by its terms, and hence indeterminate as to time, could not be enforced indefinitely, and must give way to the general policy of the law under which the legislature created a special tribunal to pass upon and determine questions relating to the reasonableness of rates charged by public service corporations."

There seems to be no difference in principle between the case of a contract indeterminate and one that is determinate, nor is there any difference in principle between a contract with a borough, with a corporation, or with an individual. Any contract of this character, whether for a definite or indefinite period, must give way when its terms conflict with the rates fixed in the method prescribed by the Public Service Act of 1913.

We hold that the court below was without jurisdiction to make the decree prayed for, and that the appellee must be remitted to his remedy of filing a complaint with the Public Service Commission, under the provisions of the Act of July 26, 1913, P. L. 1374. The decree is therefore reversed and the bill of complaint dismissed, at the costs of the appellee, without prejudice to the right of the appellee to apply to the Public Service Commission.