# Springfield Consolidated Water Co. *v.* Philadelphia, Appellant.

*Municipalities—Public service companies—Water companies— Purchase of water by municipality—Police powers—Constitutional law.*

1. Where a city purchases water from a water company, it is a consumer within the Public Service Act to the same extent as any person, firm, or corporation buying water from the company; what may thereafter become of the water, even if resold, does not change this conclusion.

2. A contract providing for free or maximum price service of a public service company, relates entirely to the commodity sold, whether it is water, light, passenger traffic or other public service.

3. Such contract even when made by a municipality may be regulated by the State in the exercise of its police powers, and may be modified as to its terms or other rates, so that it shall be equitable and just to the utility and all consumers.

4. A contract for free or maximum price service is not similar to those contracts requiring acts to be done as a condition or consent to enter a city, where this imposition by the municipality is a matter of right.

5. Contracts relating to service, whether private or municipal, cannot be made beyond the reach of regulation by the State because of article XVI of the Constitution relating to the abridgment of the police power; the police power in this aspect is supreme.

*Public Service Commission—Public service companies—Rates— Notice of filing rates—Defective notice.*

6. It is doubtful whether notice of the filing of a schedule of rates of a public service company is necessary to a party engaged in a hearing before the Public Service Commission.

7. The schedule evidences the commission's action and is binding not only on the parties but also on every person affected, unless unusual circumstances are present.

8. A defective notice printed on the back of the outside cover of the published rates, will not invalidate the rate or suspend its operative effect.

9. Such defective notice might, under certain conditions as to those actually injured, have the effect of extending the time within which exceptions may be filed, but certainly not beyond a period when ordinarily notice would be given, as, for example, the receipt of a bill under an increase.

10. Even if exceptions had been filed soon after actual notice was received, the rate would still be a collectible one.

Argued November 25, 1925.  Appeal, No. 350, Jan. T., 1925, by defendant, from judgment of C. P. No. 3, Phila. Co., March T., 1925, No. 910, on verdict for plaintiff, in case of Springfield Consolidated Water Co. v. Philadelphia.  Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.  Affirmed.

Assumpsit for water supplied.  Before FERGUSON, J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiff for $21,526.51. Defendant appealed.

*Error assigned* was, inter alia, refusal of judgment for defendant n. o. v., quoting record.

*James Francis Ryan,* Assistant City Solicitor, with him *Joseph P. Gaffney,* City Solicitor, for appellant, cited: Collingsdale Boro. v. P. R. T. Co., 274 Pa. 124; Swarthmore Boro. v. P. S. C., 277 Pa. 472.

*Aaron S. Swartz, Jr.,* with him *Arthur H. Miller* and *Samuel H. High,* for appellee, cited: Lansdowne Boro. v. P. S. C., 74 Pa. Superior Ct. 203; Suburban Water Co. v. Boro., 268 Pa. 243; Ben Avon Boro. v. Water Co., 75 Pa. Superior Ct. 290; Beaver Valley Water Co. v. P. S. C., 76 Pa. Superior Ct. 255; Wayne Sewerage Co. v. Fronefield, 76 Pa. Superior Ct. 491.

OPINION BY MR. JUSTICE KEPHART, January 4, 1926:

Appellee sued to recover under a schedule of rates filed pursuant to an order of the Public Service Commission made after complaint and hearing. All municipalities served by the utility were charged for each fire service, hydrant and lines thereto. The City of Philadelphia resisted the claim because the ordinance granting appellee the right to supply water contained a stipulation for free use of the pipe lines and water for fire and school purposes in the twenty-second ward. The city also set up an additional defense in the failure to give proper notice of the schedule promulgated, Philadelphia being omitted from the counties there named.

The city, in the exercise of its corporate powers, purchased water from appellee for the use of its citizens. In so doing, it was a consumer within the Public Service Act to the same extent as any person, firm or corporation buying water from the company. What might thereafter become of the water, even if resold, would not alter this conclusion.

The ordinance under which appellee entered the city provided for water free of charge. A contract that provides for free or maximum price service relates entirely to the commodity sold, whether it be water, light, passenger traffic or other public service. The State, in the exercise of its police power, may regulate such contracts. It may modify their terms and substitute a reasonable rate of charge,—one that is equitable and just to the utility and all consumers: Scranton v. Public Service Commission, 268 Pa. 192. This is the rule although the contract for free or maximum rates be made under a provision of the Constitution, where that provision comes in contact with the police power of the State exercised within specified limits for the public good in each particular community. The police power in this aspect is supreme: Scranton v. Public Service Commission, supra; Leiper v. Baltimore & Philadelphia R. R. Co., 262 Pa. 328. A contract for free or maximum price service is

not similar to those contracts requiring acts to be done as a condition or consent to enter a city, where this imposition by the municipality is a matter of right. For illustration: The Constitution requires street car companies to secure municipal consent to enter a city. An exaction to pave between and outside the rails in the streets is not within the regulatory control of the Commonwealth. Such requirements may ultimately affect rates, but this court, in Swarthmore Borough v. Public Service Commission, 277 Pa. 472, has distinguished them from contracts for service such as the one under consideration. The distinction may be justified because the subject-matter, in part, prescribes a method for keeping up the roadbed in the city limits. It would be a general maintenance charge.

Contracts like the one in question, relating to service only, are not within the ruling in Opelika v. Sewer Co., 265 U. S. 215, and Public Service Co. v. St. Cloud, 265 U. S. 352. The basis of these decisions is that the State, where each controversy arose, did not regard maximum price service made under a duly authorized contract for a reasonable length of time as subject to regulatory control under the police power during that time: Southern Iowa Electric Co. v. Chariton, 255 U. S. 539, 542; Georgia Ry. v. Decatur, 262 U. S. 432, 438. This State has held that no contract, private or municipal, can be made beyond the reach of regulation because of article XVI of the Constitution relating to nonabridgment of the police power. See our own case, Edgewood Boro. v. Public Service Commission, 258 U. S. 604, where an appeal from the decision of this court in 269 Pa. 342, following Scranton v. Public Service Commission, supra, was dismissed for want of jurisdiction. The case in this respect follows Pawhuska v. Pawhuska Oil & Gas Co., 250 U. S. 394, and later decisions. Southern Utilities Co. v. Palatka, 45 Supreme Ct. Rep. 488, states the law as it existed in this State before the Public Service Act, except where other legislation was effective, such as

water rates. The city was a party to the litigation before the Public Service Commission and made the same objection to the rate as the one we are now discussing.

It is doubtful whether notice of the actual filing of a schedule of rates is necessary to a party engaged in the hearing. The schedule evidences the commission's action and is binding not only on the parties but also on every person affected, unless unusual circumstances are present. A defective notice printed on the back of the cover (if the omission can be considered a defect) will not invalidate the rate or suspend its operative effect. It might, under certain conditions as to those actually injured, have the effect of extending the time within which exceptions may be filed, but certainly not beyond a period when ordinary notice would be given, as, for example, the receipt of a bill under an increase. Here, that time has long since passed, this claim being for service from April 1st, 1918 to 1922.

Had exceptions been filed soon after actual notice was received, the rate would have been still a collectible one, similar to Suburban Water Company v. Oakmont Boro., 268 Pa. 243, at p. 252, where we said: "Moreover, when a rate becomes effective, it is a rate established by law......It has become a collectible, suable rate until it is set aside in the method provided in the act. It is, therefore, for the time being, a legislative rate." There was nothing for the court to do here but direct a verdict for plaintiff when the bill based on the schedule was received in evidence. We may add that, although we have discussed the effect of the ordinance and the question of notice of filing rates, these matters are not properly before the court. They should be determined under the Public Service Act.

Judgment of the court below is affirmed.