Henshaw et ux., Appellants, v. Fayette Gas Company.

Argued April 19, 1932.

Before TREXLER, P. J., KELLER, GAWTHROP, CUNNINGHAM, BALDRIGE, STADTFELD and PARKER, JJ.

*James Gregg* of *Gregg and Gregg,* for appellants.

*J. Smith Christy* of *Weil, Christy and Weil,* for appellee.

OPINION BY BALDRIGE, J., July 14, 1932:

On June 5, 1896, the appellants entered into an agreement with the Southwest Natural Gas Company, the predecessor of the Fayette County Gas Company, the appellee, and hereinafter called the gas company, whereby a right of way across their farm in North Union Township, Fayette County, was granted, in consideration of natural gas being supplied in their resi-

dence. On November 28, 1919, the gas company gave notice, in writing, to the appellants that, owing to difficulties in obtaining an adequate supply of gas, together with the increased cost of transporting, distributing, etc., it would discontinue the free service of gas; that if they desired to continue using natural gas it would agree to furnish the same on an equal basis and under the same conditions as applied to all other consumers. On March 10, 1920, the gas company notified the Henshaws that if the gas service bills, as rendered for January and February, 1920, were not paid before March 15th following, gas would be discontinued without further notice. On March 15, 1920, this bill in equity was presented to the court, and a temporary injunction obtained, restraining the gas company from interfering with the supply of gas furnished to the Henshaws. For some inexplicable reason, this action was not disposed of until January 26, 1932, when the injunction was finally dissolved and the bill dismissed on the ground that (1) the court of equity was without jurisdiction; (2) the plaintiffs could not require the defendant to furnish free gas under the contract set forth in the bill; (3) the defendant had the right to discontinue the service of gas unless a contract was entered into between the parties, agreeing to pay the regular scheduled rates. This appeal followed.

The gas company obtained its franchise from the Commonwealth and it is "subject to the reserved power of the Commonwealth to supervise and regulate the exercise of the franchise, and in the case of rates, to increase or decrease them as the public interest, as distinguished from mere private interest, may demand": Leiper v. Baltimore & Phila. R. R. Co., 262 Pa. 328, 332. See also Scranton v. P. S. C., 268 Pa. 192.

Under articles II and III of the Public Service Act of July 26, 1913, P. L. 1374, this gas company was au-

thorized to furnish and maintain service, and make and collect rates; and in pursuance thereof, filed its schedules and existing contracts. When the rate, after printing, posting and filing, became effective, it had the same force and effect as though it had been established by law. It is conceded that the commission's jurisdiction does not embrace all contracts, but there is no doubt that authority has been expressly given it in matters concerning rates, service and facilities: Citizens Pass. Ry. Co. v. P. S. C., 271 Pa. 39, 54. A duty is imposed upon the commission to see that rates are not only fair and just, but equal and without discrimination. The policy of the law is to place every one, in so far as is feasible, on an equal basis. Section 8, article III, of the Public Service Law (p. 1393) provides: "It shall be unlawful ...... (a). To charge ...... any person ...... for any service rendered ......a greater or less compensation or sum than it shall demand ...... from any other person ...... for a like and contemporaneous service under substantially similar circumstances and conditions ...... (b). To make or to give any undue or unreasonable preference or advantage in favor of or to any person ...... or any particular kind or description of ...... service in any respect whatsoever." As Judge KELLER points out in Wayne Sewerage Co. v. Fronefield, 76 Pa. Superior Ct. 491: "Free use of public service by certain favored persons cannot be permitted under any form, whether deed, contract, ordinance, agreement, or otherwise: Vernon Township v. Public Service Commission, 75 Pa. Superior Ct. 54; Ben Avon Borough v. Ohio Valley Water Co., 75 Pa. Superior Ct. 290," as such action is discriminatory. When a rate is once established, it applies to all and cannot be departed therefrom: Suburban Water Co. v. Oakmont Boro., 268 Pa. 243, 254. The rate of the gas company applied, therefore, to the appellants, the same as to other consumers, notwithstanding the existence of a written contract providing

for a different rate, as the Public Service Commission Law supplants any agreement, in so far as rates are involved, between the consumer and the company.

The appellants contend, however, that this is not a rate case. With this position we cannot agree. A rate is the consideration for the services rendered (Swarthmore Boro. v. P. S. C., 277 Pa. 472, 483), and it makes no difference whether the consideration is in the form of a grant, an easement, reduction in freight charges, passes, or free gas. The question of rates is involved in all such cases and comes squarely under the jurisdiction of the Public Service Commission. We think this case is within the clear reasoning of Leiper v. Baltimore & Phila. R. R. Co., supra, where certain freight rates were agreed upon in consideration of a right of way; but the court held that those rates had to yield to the rates which subsequently became effective under the Public Service Company Law. As the question involved relates to rates, which are within the jurisdiction of the commission, to whom no applications for relief have been made by the appellants, the court of equity was without jurisdiction: Bellevue Boro. v. Ohio Valley Water Co., 245 Pa. 114; V. & S. Bottle Co. v. Mountain Gas Co., 261 Pa. 523; Klein-Logan Co. v. Duquesne Light Co., 261 Pa. 526; McKeesport v. Equitable Gas Co., 268 Pa. 233.

The appellants also contend that the enforcement of the rate against them is an infringement upon the fourteenth amendment to the Constitution of the United States. Our Supreme Court, however, has taken the contrary view. In Suburban Water Co. v. Oakmont Boro., supra (pp. 253, 255), it expressly holds ''that the change of a rate fixed by contract for the performance of service by a public utility company does not impair the obligation of the contract under the Constitution of the United States ...... The contract is simply modified or reformed so as to include for the time being the new rate fixed by law ...... There is,

however, no impairment of the obligation but merely a fixing of the rate to be charged for the service, which rate could only be legally fixed by the parties so long as it was not fixed by the sovereign power of the Commonwealth, and the parties are presumed to have included this provision in their contract. But whether there was, or was not, a contract, under the Public Service Act, when the company has changed a rate in accordance with the provisions of the law, that rate, on the day advertised, is an effective rate, suable and collectible, and it is not governed or controlled by section 2 of article III.'' The Supreme Court said in Springfield Con. Water Co. v. Phila., 285 Pa. 172, that no contract, private or municipal, can be made beyond the reach of regulation because of article XVI, section 3, of our Constitution, which provides that ''the exercise of the police power of the State shall never be abridged or so construed as to permit corporations to conduct their business in such manner as to infringe the equal rights of individuals or the general well-being of the State.''

A careful consideration of all the record and appellants' argument discloses no error.

Judgment of the lower court is affirmed.