## Zeuger Milk Company *v.* Pittsburgh School District, Appellant.

Argued March 23, 1939.   Before SCHAFFER, MAXEY, DREW, LINN and STERN, JJ.

*N. R. Criss,* for appellant.

*Ben Paul Brasley,* of *Brasley, Rubin, Balter & Cole,* for appellee, was not heard.

OPINION BY MR. JUSTICE SCHAFFER, April 24, 1939:

Plaintiff, a milk company, recovered a verdict and judgment in the court below against defendant school district for milk sold and delivered for $19,351.27. The learned trial judge gave the jury binding instructions in plaintiff's favor, and the court in banc refused defendant's motion for judgment non obstante veredicto and entered judgment on the verdict, from which action defendant appeals.

On December 19, 1933, defendant awarded to plaintiff a contract for the supply of milk to the school district for the year 1934 at prices named. On January 2, 1934, the Milk Control Board law (Special Session 1933-34, P. L. 174) was approved by the Governor. That act provided in Section 18 E: "After the board shall have fixed prices to be charged or paid for milk, whether by class, grade or use, it shall be unlawful for a milk dealer to sell or buy, or offer to sell or buy, milk at any

price less or more than such price or prices as shall be applicable to the particular transaction . . ."

On April 7, 1934, the Milk Control Board fixed the minimum prices to be charged to various classes of users of milk. The minimum prices applicable to this transaction were higher than those specified in the contract. The appellee continued to supply milk to the school district, billing it at the new fixed price. Instead of paying this price, the school district remitted at the contract price. This suit is brought to recover the difference which the school district refused to pay. Had the milk been sold for less than the fixed price the sale would have been an unlawful act.

The Milk Control Board law of 1934 recites in its preamble, that unhealthful practices are carried on in the production, sale and distribution of milk, that such conditions constitute a menace to the health of the inhabitants of the Commonwealth, and, that in order to protect their well being, it is necessary to declare that the sale of milk in the Commonwealth is a business affecting the public health and affected with a public interest. The first section of the law sets forth: "That in the exercise of the police power of the Commonwealth and to protect the public health and public welfare, it is hereby declared that the . . . sale of milk in the Commonwealth is a business affecting the public health and affected with a public interest, and it is hereby declared to be the legislative intent that this act shall be an emergency measure enacted for the purpose of regulating and controlling the milk industry in this Commonwealth for the protection of the health, welfare and comfort of the inhabitants thereof."

We thus have an enactment passed under the police power for one of the main purposes that power may be invoked, the care for and preservation of the public health. We held the act constitutional in *Rohrer v. Milk Control Board*, 322 Pa. 257, 189 A. 336; also the subsequent acts amending and re-enacting its provisions:

*Colteryahn S. Dairy v. Milk Control Commission; Keystone Dairy Co. v. Milk Control Commission,* 332 Pa. 15, 1 A. (2) 775.

Appellant argues that, as applied to the contract which it had with appellee, the act is unconstitutional because the contract was in existence when it was passed. This argument is foreclosed by our above cited decisions. The contract so far as price is concerned is governed by the principle recognized throughout American jurisprudence. "The constitutional protection of the obligation of contracts is necessarily subject to the police power of the state, and therefore a statute passed in the legitimate exercise of the police power will be upheld by the courts, although it incidentally destroys existing contract rights. This principle applies to contracts made with the state, as well as to contracts between individuals. . . . All contracts made with reference to any matter that is subject to regulation under the police power must be understood as made in reference to the possible exercise of that power. This is based on the principle that if the legislature has no power to alter its police laws when contracts will be affected, then the most important and valuable reforms may be precluded by the simple device of entering into contracts for the purpose of doing that which otherwise may be prohibited": 12 Am. Jur. 54; *Leiper v. Baltimore & Phila. R. R. Co.,* 262 Pa. 328, 105 A. 551; *Suburban Water Co. v. Oakmont Boro.,* 268 Pa. 243, 110 A. 778; *Burke v. Bryant,* 283 Pa. 114, 128 A. 821; *Teachers' Tenure Act Cases,* 329 Pa. 213, 197 A. 344. The contract is not abrogated by the act; it is simply modified as to price: *Leiper v. Baltimore & Phil. R. R. Co.,* supra, at p. 332; *Suburban Water Co. v. Oakmont Boro.,* supra, at p. 253; *Springfield Con. Water Co. v. Phila.,* 285 Pa. 172, 174, 131 A. 716; *Am. Aniline Prod. v. Lock Haven,* 288 Pa. 420, 135 A. 726; *Dormont Boro. v. South Pittsburgh Water Co.,* 322 Pa. 60, 185 A. 263; *Henshaw v. Fayette Gas Co.,* 105 Pa. Superior Ct. 564, 568, 569, 161 A. 896.

Appellant contends that the action of its superintendent of supplies in continuing to receive milk after the orders became effective on April 7, 1934, amounted to a new contract not binding on the district because not executed in accordance with the terms of the School Code of May 18, 1911, P. L. 309, 24 PS Sec. 1 et seq. Whether the orders of April 7 would in themselves have been sufficient to warrant the school district in terminating its obligation to receive milk under the contract, it is not necessary to decide, because it continued to receive the milk. The School Code has no application to a situation such as here presented as no new contractual obligations were incurred: *Suburban Water Co. v. Oakmont Boro., supra.*

The court below properly caused judgment to be entered in plaintiff's favor.

Judgment affirmed.