American Federation of State, County and Municipal Employees, AFL-CIO, by Its Trustee ad Litem, Gerald W. McEntee, Petitioner *v.* Commonwealth of Pennsylvania et al., Respondents.

Joint Bargaining Committee of the Pennsylvania Employment Security Employees' Association and the Pennsylvania Social Services Union, AFL-CIO, by Its Trustee ad Litem, Andrew Stern, Petitioner *v.* Commonwealth of Pennsylvania et al., Respondents.

Argued June 6, 1980, before Judges MENCER, ROGERS and CRAIG, sitting as a panel of three.

*Richard Kirschner*, with him *Deborah R. Willig, Kirschner, Walters & Willig*, for petitioner, American Federation of State, County and Municipal Employees et al.

*Stephen A. Sheller*, P.C., by *Bruce M. Ludwig*, for petitioner, Joint Bargaining Committee of the Pennsylvania Employment Security Employees' Association et al.

*John G. Knorr, III*, Deputy Attorney General, with him *Richard Kirschner, Louis G. F. Retacco, John D.*

*Raup,* Chief Counsel, *Allen C. Warshaw,* Deputy Attorney General, and *Edward G. Biester, Jr.,* Attorney General, for respondents.

OPINION BY JUDGE CRAIG, August 11, 1980:

By petitions for review, consolidated for consideration here, the collective bargaining representatives[1] of three major groups of state employees (unions) have addressed our original jurisdiction with a request that we enjoin the Commonwealth from applying the Act of July 20, 1979, P.L. 156, §1, 65 P.S. 371 (Act 51), so as to limit the reimbursement to be received by those groups of state employees for personal auto mileage, on official business, to 17 cents per mile, contrary to collective bargaining agreements executed a year earlier, in July 1978, which provide for such reimbursement at the rate of 18.5 cents per mile (for the first 1300 miles driven each month).[2]

Because the pleadings have confirmed the facts to be undisputed, the parties on both sides have filed cross motions for summary judgment, presenting us with questions of statutory interpretation and constitutionality as follows:

1.   Is Act 51, read with Section 703 of the Public Employe Relations Act (PERA),[3] to be interpreted as imposing a per-mile maximum of 17 cents upon the mileage reimbursement payable to state employees under pre-existing collective bargaining agreements?

---

[1] Petitioners are: American Federation of State, County and Municipal Employees, AFL-CIO, Council 13; the Joint Bargaining Committee of the Pennsylvania Employment Security Employees' Association; and the Pennsylvania Social Services Union, AFL-CIO.

[2] The agreements initially provided for 17 cents per mile for the first 1300 miles per month and 12 cents per mile over that. Pursuant to an escalation clause, the first rate went to 18.5 cents June 29, 1979 and the over-1300-mile rate went to 13.5 cents. The 13.5-cent rate is not in dispute.

[3] Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §1101.101 et seq.

2. If such an interpretation results, is the applicable legislation unconstitutional as impairing the obligation of contract or as violative of due process or equal protection of laws?

Because of the collective bargaining provisions in this situation, we are involved with Section 703 of PERA, which provides:

> The parties to the collective bargaining process shall not effect or implement a provision in the collective bargaining agreement if the implementation of that provision would be in violation of, or inconsistent with, or in conflict with any statute or statutes enacted by the General Assembly of the Commonwealth of Pennsylvania or the provisions of the Municipal Home Rule Charters.

*Pennsylvania Labor Relations Board v. State College Area School District*, 461 Pa. 494, 510, 337 A.2d 262, 270 (1975), has instructed us that Section 703 provides for the superseding of a collective bargaining agreement provision only where the applicable statutory provisions are "explicitly and definitively" in conflict.[4]

We therefore turn to the provision of Act 51 in issue, which states:

> Section 1. Notwithstanding the provisions of any other act to the contrary the mileage fee to be charged and received by an official, officer or employee of the Commonwealth, its departments, bureaus, boards, commissions, agen-

---

[4] One of the clearest examples of such a conflict is the provision of the State Employees Retirement Act, 71 Pa. C.S. §5955, which reads:

> Pension rights of State employees shall be determined solely by this part of any amendment thereto, and no collective bargaining agreement between the Commonwealth and its employees shall be construed to change any of the provisions herein.

cies and authorities and any official, officer or employee of its political subdivisions or authorities created thereby, or of any intermediate unit shall be $.17 per mile, unless a lesser rate is adopted by the department, bureau, board, commission, agency, authority, political subdivision or intermediate unit.

Thus the statutory construction problem here involves both Act 51 and PERA Section 703.

Initially we cannot agree with the unions' contention that the opening phrase of Act 51, "Notwithstanding the provisions of any other act to the contrary," means that it is intended to supersede only other statutory provisions and therefore must be read to mean that it does not supersede any contract. That view violates logic by concluding that the express negation of one class necessarily constitutes a positive affirmation of a disparate class. That opening phrase is merely a redundant iteration of Act 51's general repealer, from which the unions seek to draw the same conclusion; both those elements of the statute, by merely stating that Act 51 prevails over conflicting statutes, express nothing about its relationship to pre-existing contracts.

Turning to the operative language of Act 51, which is plainly a direction that mileage reimbursement be 17 cents per mile or less, we are compelled to view it, contrary to the unions' contentions, as establishing a maximum at that rate, at least within its lawful scope to be considered further below. We appreciate union counsel's point that an earlier bill version of Act 51 stated that the rate would be "as is established by the authority responsible . . . but in no case . . . in excess of" the stated rate; however, replacement of that language, in the final version, with the flat statement that the rate "shall be" 17 cents unless a lesser rate is adopted by the agency, can be considered, with

equal cogency, to be a change of wording without necessarily implying a change of meaning.

We come down to the pivotal question: Should the scope embraced by that maximum include mileage reimbursement systems provided under pre-existing collective bargaining agreements? We have already encountered a similar question in *County of Dauphin v. Pennsylvania Social Service Union*, 33 Pa. Commonwealth Ct. 462, 382 A.2d 999 (1978), reversing 33 Pa. Commonwealth Ct. 456, 375 A.2d 1353 (1977). There Dauphin County entered into a collective bargaining agreement with its employees providing for a 14 cents per mile reimbursement with an escalation clause, for cost of gasoline, which had brought it to 18 cents. Thereafter a new Section 414 of the County Code[5] provided that:

> All county officials and employes may, when authorized by the county commissioners, be reimbursed at the rate of twelve cents (12¢) per mile for the use of their personal vehicle when discharging their official duties or performing a duty imposed upon them unless provisions of law require the payment of a higher rate.

Even though that statute used the verb form "may," we expressly held that it also established a maximum rate of reimbursement. Because we viewed it as an authorization conferred upon subordinate governmental agencies of the state, we could not read it as allowing any rate greater than the amount stated. However, we found therein no statutory warrant which "explicitly and definitively" prohibited Dauphin County from making an agreement for reimbursement at a higher rate, and we therefore concluded that the contract was not modified by the later statute.

In the present case, as we have noted above, it is necessary to recognize that Act 51 also establishes a

---

[5] Act of August 9, 1955, P.L. 323, *as amended*, 16 P.S. §414.

maximum rate. Here too, very much as in the *Dauphin County* case, we can find nothing in Act 51 to indicate that the class of transactions covered by its maximum was intended to include those governed by a subsisting collective bargaining agreement.

The Commonwealth's argument would place some weight on the dictum in the *Dauphin County* case by which we indicated that the PERA itself might not unreasonably be viewed as falling within the exception permitted by the County Code where "provisions of law require the payment of a higher rate." However, our *Dauphin County* decision did not turn on that point. That provision of the County Code appears to have been just the other side of the same statutory coin indicated by the "Notwithstanding" phrase in Act 51; the County Code allowed modification by other laws, and Act 51 bars modification by other laws, but neither of them articulates a maximum as being in conflict with subsisting collective bargaining agreements.

Because Act 51 does not purport to be retroactive we certainly should not strain to interpret it as such. 1 Pa. C.S. §1926. If there is any expression of retroactive operation, we are left with only Section 703 of PERA as its locus. The troublesome language in that section, concerning the effecting or implementation of a contract provision in conflict with "statutes enacted," was treated as ambiguous or inconsistent in the *State College Area School District* case, where the Supreme Court emphasized the PERA's role in upholding collective bargaining and stated (461 Pa. at 509, 337 A.2d at 269):

> Section 703 merely prevents a term of a collective bargaining agreement from being in violation of existing law.

That reference to "existing law," although admittedly not necessary to the holding in the *State College* case,

where no retroactive statutory operation was involved, is nevertheless very consistent with the view that retrospective operation will not be read into the statute and that, moreover, a provision such as Section 703 should be interpreted in such a way as to render it constitutional. 1 Pa. C.S. §1922(3). Because Act 51 is clearly not a police power regulation, like the housing provision in *DePaul v. Kauffman,* 441 Pa. 386, 272 A.2d 500 (1971), or as in *Zeuger Milk Co. v. Pittsburgh School District,* 334 Pa. 277, 5 A.2d 885 (1939), the employment of Section 703 to apply Act 51's maximum to pre-existing contract obligations would clearly seem to produce an impairment of the obligation of an existing contract in violation of Pa. Const. art. 1, §17 and U. S. Const. art. I, §10. *See Burello v. State Employees Retirement System,* 49 Pa. Commonwealth Ct. 364, 411 A.2d 852 (1980) and *United States Trust Co. of New York v. State of New Jersey,* 431 U.S. 1 (1977). To allow the governmental party to a collective bargaining agreement unilaterally to amend the contract during its agreed term, by legislative command, would be particularly repugnant to the constitutional concept which respects the sanctity of contract.

Therefore, we conclude that Act 51 and Section 703 of PERA should not, severally or jointly, be considered to effect a one-sided adjustment of contract terms mutually adopted in good faith.

In view of our negative answer to the statutory interpretation issue, we do not reach the question of Act 51's constitutional validity as such, nor does the case pleaded here permit us to consider hypothetically its impact upon any contract coming into being after Act 51's effective date.

The unions' motions for summary judgment are granted, and the injunction will issue.

### ORDER

AND Now, this 11th day of August, 1980, upon consideration of cross motions for summary judgment, respondents' motions for summary judgment are denied, petitioners' motions for summary judgment are granted, the Act of July 20, 1979 (No. 51), P.L. No. 156 is declared to be inapplicable to the employee auto mileage reimbursement provisions in the collective bargaining agreements involved in this case, and respondents are enjoined:

1. To comply with the terms of the collective bargaining agreements involved in these cases as they govern employee auto mileage reimbursement, without limitation or modification by the aforesaid Act; and

2. To make prompt payment, to all employees entitled thereto hereunder, of any sums, payable by the terms of such collective bargaining agreements, which have been withheld.