IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Valley Forge Sewer Authority          :
                                      :
              v.                      :
                                      :
Brian Hipwell, Chris Hipwell,         :
David Tober and Wanda Warner,         :     No. 1924 C.D. 2013
                    Appellants        :     Submitted: January 30, 2015


BEFORE:    HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
           HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE ANNE E. COVEY, Judge


OPINION BY
JUDGE COVEY                                  FILED: July 31, 2015


            Brian Hipwell, Chris Hipwell, David Tober and Wanda Warner
(collectively, Hipwell) appeal from the Chester County Common Pleas Court's (trial
court) October 8, 2013 order striking and dismissing Hipwell's Affidavit of Defense
to the Valley Forge Sewer Authority's (Authority) Writ of Scire Facias Sur Municipal
Claim,[1] and entering judgment in favor of the Authority for its municipal claim
together with interest and attorney's fees.  There are two issues for this Court's
review: (1) whether the trial court erred in finding that the municipal claim filed
against Hipwell's property was valid under what is commonly referred to as the
Municipal Claims and Tax Liens Act (MCTLA);[2] and (2) whether the trial court erred
when it awarded the Authority attorney's fees and interest.  After review, we affirm.

            On or about May 24, 2006, Hipwell became the owner of property
located at 133 Orchard Lane, Phoenixville, Pennsylvania (Property).  The Property

---

[1] "A writ of scire facias sur municipal claim is a writ used to enforce payment of a
municipal claim out of the real estate upon which such claim is a lien." *Fox Chapel Sanitary Auth.
v. Abbott*, 384 A.2d 1012, 1013 n.1 (Pa. Cmwlth. 1978).

[2] Act of May 16, 1923, P.L. 207, *as amended*, 53 P.S. §§ 7101-7505.

had been connected to the Authority's sanitary sewer system since 1977, and the Authority's records reflected that the Property was improved as a single-family dwelling. Section 165-16 of the Authority's Code of Rules and Regulations (Code) imposes a $75.00 quarterly sewer fee per equivalent dwelling unit (EDU). Since acquiring the Property, Hipwell received quarterly bills from the Authority and paid the $75.00. Although the Authority issued regular quarterly $75.00 invoices based upon its understanding that the Property was a one-unit dwelling, in reality, the Property had been a multi-family dwelling unit for many years before Hipwell's acquisition. In July 2009, the Authority investigated a sewage smell complaint at the Property and discovered for the first time that the Property was improved as a multi-family dwelling containing four EDUs. Until that time, Hipwell did not know the Authority was unaware that the Property contained four EDUs, and never concealed that fact from the Authority.

By letter dated September 17, 2009, the Authority informed Hipwell that it changed its records to accurately reflect that the Property was a multi-family dwelling, and requested an additional $2,925.00 (Amount in Controversy) by September 30, 2009 for the three EDUs not billed in the prior invoices. Hipwell disputed the Amount in Controversy, asserting that since purchasing the Property, he had paid the quarterly invoices in full. Beginning October 1, 2009, Hipwell paid quarterly $300.00 invoices reflecting $75.00 charges for all four EDUs. By March 23, 2010 letter, the Authority notified Hipwell that it intended to forward the unpaid Amount in Controversy to its Solicitor for the filing of a municipal lien and other collection efforts in the amount of $3,108.82. On May 4, 2010, a municipal claim was filed against the Property for the Amount in Controversy, along with associated fees and costs in the amount of $3,469.29. On November 10, 2010, the Authority

filed a Writ of Scire Facias Sur Municipal Claim.[3] Hipwell filed an Affidavit of Defense on November 29, 2010.

The matter was submitted to the trial court based upon the parties' Joint Stipulations of Fact (JSOF) and trial briefs. On October 8, 2013, the trial court issued its decision striking and dismissing Hipwell's Affidavit of Defense, and entering judgment in favor of the Authority's Writ of Scire Facias Sur Municipal Claim, together with interest and attorney's fees. Relying on the case of *West Penn Power Co. v. Nationwide Mutual Insurance Co.*, 228 A.2d 218 (Pa. Super. 1967), the trial court held that the Authority was entitled to payment for the sewer service Hipwell received. Hipwell appealed to this Court.[4]

Hipwell first argues that the trial court failed to give proper weight to the JSOF. Hipwell further contends that *Nationwide* is not determinative of the instant matter, and that the trial court was required to consider his valid defenses.

---

[3]
> A property owner that is aggrieved by a municipal lien that is not defective on its face may obtain an adjudication as to the validity of the lien by serving notice upon the claimant municipality to issue a writ of *scire facias* on the claim. A writ of *scire facias* to ascertain the amount due on a lien is ordinarily requested by a property owner to give him the opportunity to show why the lienholder should not be allowed to execute on his property. After the lienholder issues the writ, the owner may file an affidavit raising his defenses to the lien. Proper defenses to the writ include actual payment of taxes, a defective claim or lien, fraud, or lack of process or notice. In a *sci*[*re*] *fa*[*cias*] proceeding, the trial court ultimately determines the appropriate amount of the lien, including any interest or costs.

*Radhames v. Tax Review Bd.*, 994 A.2d 1170, 1178 (Pa. Cmwlth. 2010) (citations and footnote omitted).

[4] "This Court's scope of review of a trial court's order disposing of a petition to strike a municipal claim is limited to a determination of whether the court abused its discretion or committed an error of law or whether constitutional rights were violated." *Penn Twp. v. Hanover Foods Corp.*, 847 A.2d 219, 222 n.10 (Pa. Cmwlth. 2004).

3

In *Nationwide*, West Penn Power Company (West Penn) brought an action in assumpsit for electric service supplied to Nationwide Insurance Company (Nationwide Insurance). Due to a billing error, Nationwide Insurance was billed for less than the amount of service actually supplied. Although the bills had been paid, West Penn sought the difference between the amount that had been billed and paid, and the amount that should have been billed and paid. In new matter, Nationwide Insurance averred facts supporting the defenses of accord and satisfaction, payment, estoppel and breach of contract. West Penn filed preliminary objections

> alleging that the only issue that the court could consider was the amount or quantity of service rendered by the public utility and whether or not payment for said service had been made in accordance with the effective tariff of the public utility as filed with the Public Utility Commission. The court below sustained the motions to strike and the demurrer and permitted the appellant twenty days to file [an] amendment to the new matter.

*Id*. at 219. Thereafter, Nationwide Insurance filed an amended answer in which it restated portions of an earlier answer which had been stricken pursuant to the trial court's previous order. The trial court concluded that

> [t]he only issue presented by the pleadings relates to the quantity of electricity . . . served by [West Penn] to [Nationwide Insurance] during the 31[-]month period. The tariff or rate is established by law. The amount paid during the 31[-]month period is admitted. The alleged additional service above that originally billed by [West Penn] is denied by [Nationwide Insurance]. This creates the issue.

*Id*. at 219-20 (quotation marks omitted). On review, the Superior Court stated:

> We agree with the court below that the only issue is whether the appellant has paid in full for electricity furnished it by the utility. A utility can only charge the customer the lawful rate as tariffed. It cannot make a special contract with the customer. There can be no favored treatment for a customer. It cannot demand or receive

4

directly or indirectly a greater or lesser rate than specified in its tariff.

*Id.* at 220.  The *Nationwide* Court further explained:

> The statement of an account does not work an estoppel.  It is prima facie an accurate showing of the standing of the parties as to a particular matter, but it has never been held to be so conclusive that one is bound to an account shown to be unjust or fraudulent[.] . . .  If the meter showed that the defendant consumed the amount of electricity now alleged by the plaintiff the latter's right is unquestionable . . . [.]

*Id.* (quoting *Allegheny Cnty. v. Thomas*, 31 Pa. Super. 102, 103 (1906)).

Hipwell acknowledges the *Nationwide* holding, but contends that it must not be read to preclude his right to assert valid defenses to the lien.  Hipwell relies on *West Penn Power Co. v. Piatt*, 592 A.2d 1306 (Pa. Super. 1991), wherein our Superior Court clarified its earlier holding in *Nationwide*, explaining:

> In *Nationwide* . . . West Penn sought to recover funds lost as a result of its underbilling of a customer, Nationwide Insurance . . . .  In its defense, Nationwide Insurance averred facts to constitute defenses of accord and satisfaction, payment, estoppel and breach of contract.  The trial court ruled that the only issue was whether Nationwide Insurance had paid in full for the electricity furnished by West Penn.  On appeal, this court agreed that the only issue properly raised concerned whether Nationwide Insurance had paid in full for the electricity.  **We also held that Nationwide Insurance had failed to sustain its defenses.**  In so holding, we noted that a utility can only charge the customer the lawful rate as tariffed, and cannot provide customers with preferential treatment.  However, we went on to evaluate the defenses raised by Nationwide Insurance, and rejected them because they were without merit on the facts alleged.  The important point to be drawn from the analysis in *Nationwide* is that this Court did not suggest that there is a general prohibition against the assertion of defenses to a public utility's attempt to recover amounts it undercharged a customer.  Furthermore, our examination of *Nationwide* indicates that no such prohibition exists.  The *Nationwide* court merely held that  a utility is entitled to

5

recover amounts it undercharged a customer, at least when that customer failed to allege sufficient facts in its defense to raise a disputed issue of material fact or show that the utility is not entitled to judgment as a matter of law. *Nationwide* leaves open the question of whether a utility is entitled to recover amounts it undercharged a customer when that customer asserts a meritorious defense. Thus, the trial court could properly have granted appellee summary judgment and judgment on the pleadings based on *Nationwide* only if the pleadings indicated that appellee was entitled to judgment as a matter of law on appellant's counterclaim . . . and the counterclaim was clearly and without a doubt meritless.

*Piatt*, 592 A.2d at 1308-09 (footnotes omitted; emphasis added).

Hipwell asserts contractual defenses against the lien. Specifically, Hipwell contends that he had a contractual relationship with the Authority, whereby, the Authority provided him a service and he paid for the service on a quarterly basis. According to Hipwell, "[w]hen payment was rendered and accepted by [the Authority], a quarterly contract was completed." Hipwell Br. at 13. Because all invoices were paid, Hipwell argues that there could be no delinquency. Hipwell further maintains that it would be unreasonable to permit the Authority to retroactively bill for additional amounts due to the Authority's unilateral mistake.[5]

---

[5] "Courts may take judicial notice of local government ordinances." *In re Appeal of Moyer*, 978 A.2d 405, 407 n.2 (Pa. Cmwlth. 2009); *see also* 42 Pa.C.S. § 6107(a) ("[t]he ordinances of municipal corporations of this Commonwealth shall be judicially noticed."). Although it does not appear to be part of the record, this Court takes judicial notice of Section 165-17 of the Code. Section 165-17 of the Code states:

> If the use or classification of any improved property should change, the owner must notify the Authority in writing within 15 days after the occupancy occurs or the occupancy permit is issued. A full month of service will be charged if the use or classification has changed after the 10th day of the month.

The Authority believed that the unit was a single-family unit because it had been so advised by a prior owner and was never notified of any change.

6

Section 5607(d)(9) of the Municipality Authorities Act (Act) permits the Authority

> [t]o fix, alter, charge and collect rates and other charges in the area served by its facilities at reasonable and uniform rates to be determined exclusively by it for the purpose of providing for the payment of the expenses of the authority, the construction, improvement, repair, maintenance and operation of its facilities and properties and, in the case of an authority created for the purpose of making business improvements or providing administrative services, a charge for such services which is to be based on actual benefits and which may be measured on, among other things, gross sales or gross or net profits, the payment of the principal of and interest on its obligations and to fulfill the terms and provisions of any agreements made with the purchasers or holders of any such obligations, or with a municipality and to determine by itself exclusively the services and improvements required to provide adequate, safe and reasonable service, including extensions thereof, in the areas served.

53 Pa.C.S. § 5607(d)(9). Sections 165-15 and 165-16 of the Code[6] contain the "reasonable and uniform rates" mandated by the Act. Section 165-15 of the Code states:

> There is hereby imposed upon and shall be payable by each owner of each property connected to or served by the sewer system a sewer use charge, payable quarterly as hereinafter provided, for the use, whether of the sewer system based on the schedule of use classifications and rates, or charges hereinafter set forth. The Authority utilizes a flat-rate billing system. The flat-rate system must be utilized unless specific permission to utilize another method of calculation is granted by this chapter.

*Id.* Further, Section 165-16 of the Code imposes upon the owner of each property served by the sewer system a $75.00 fee per EDU per quarter.

---

[6] The Code may be found online at: http://ecode360.com/VA1573?needHash=true

7

Here, the trial court determined, and the parties agreed, that a contractual relationship exists between Hipwell and the Authority. Although it is true that "a unilateral mistake in the formation of a contract may bar the mistaken party from relief, thus preserving the benefit of the bargain for the nonmistaken party," we discern no such mistake. *W.F. Meyers Co., Inc. v. Stoddard*, 526 A.2d 446, 449 (Pa. Super. 1987).

The flaw in Hipwell's argument is the lack of evidentiary support for his purported "contract terms." Hipwell contends that he agreed to pay $75.00 per quarter for sewer service (regardless of the number of EDUs), and those terms are binding on the parties.[7] Hipwell offered no evidence to demonstrate written contract terms inconsistent with the Code and, even if he had, the terms would be ineffective. Our Supreme Court in *Scranton Electric Co. v. School District of Avoca Borough*, 37

---

[7] Hipwell mischaracterizes the JSOF as stating that "Appellants contracted with Appellee for sewer services, to be billed at $75.00 per quarter[,]" and "Appellee supplied sewer services to the Appellants for the cost of $75.00 per quarter." Hipwell Br. at 21, 17 (emphasis omitted). Rather, the JSOF states:

> 5. Section 165-16 of the Code provides for a quarterly sewer rental fee of $75 per [EDU] based on the amount of EDUs assigned to the use of the Property. For residential uses, §165-5 of the Code assigns a single EDU per dwelling unit.
>
> . . . .
>
> 7. For each quarter from the beginning of Hipwell's ownership of the Property up to the invoice issued on October 1, 2009, Authority issued regular quarterly invoices to Hipwell for the Property's sewer rental fees in the amount of $75 based on the Authority's understanding that the Property was a one unit residential dwelling or one (1) EDU[.]

R.R. at 120.

8

A.2d 725 (Pa. Super. 1944), recognized:

> Contracts for the service of utilities are presumed to have been made subject to the police power of the state[8] . . . and it is beyond the power of the contracting parties to fix rates or provide for service permanently. Plaintiff's established rates apply to defendant the same as to other consumers notwithstanding the existence of any contract providing for a different rate or for free service. The principle has been definitely and repeatedly stated. The Public Service Company Law[9] and the Public Utility Law[10] supplant any agreement in so far as rates are involved between the consumer and the utility.

*Id.* at 727 (citations omitted).

Pursuant to the Act and the Code, each Authority customer agrees that in exchange for sewer service, that customer will pay a quarterly fee of $75.00 per EDU. Those terms applied to Hipwell like every other customer in accordance with

---

[8] We are aware that the services at issue were provided by a municipal authority as authorized under the Act. However, this Court has stated:

> [T]he price charged for utility services having been made the subject of regulations by the state, individuals cannot, by contract, abridge the police powers of the Commonwealth which protect the general welfare and the public interest. *See Lieper v. Baltimore [&] Phila[.] R[.R.] Co[.], . . .* 105 A. 551 ([Pa.] 1918); *Blythe [Twp.] Mun[.] Auth[.] v. P[a.] Pub[.] Util[.] Comm['Jn, . . .* 185 A.2d 628 ([Pa. Super.] 1962); *Henshaw v. Fayette Gas Co., . . .* 161 A. 896 ([Pa. Super.] 1932). While the cases just cited have to do with rates subject to regulation by the Public Utility Commission we see no reason why the principle should not apply in the case of municipal authorities whose rates are required by . . . the Municipality Authorities Act of 1945 [Act of May 2, 1945, P.L. 382, *as amended*] to be reasonable and uniform and made subject to review by the common pleas courts which are given jurisdiction 'to determine all such questions involving rates and service.'

*Latrobe Mun. Auth. v. Youngstown Borough Mun. Auth.*, 456 A.2d 234, 239-40 (Pa. Cmwlth. 1983).

[9] Act of July 26, 1913, P. L. 1374, *formerly* 66 P.S. §§ 1-1009 (repealed in its entirety by the Act of May 28, 1937, P.L. 1053).

[10] Act of May 28, 1937, P. L. 1053, *formerly* 66 P.S. §§ 1101-1503 (repealed by the Act of July 1, 1978, P.L. 598).

the Act and the Code. Although the extent of Hipwell's use (i.e., the number of EDUs) of the sewer system was unknown to the Authority, there was no mistake in formation of the contract. The standard contract terms provided for a uniform payment that could change based upon the number of EDUs at the location. In accordance with the Code, Hipwell was bound to pay for the services he used and the quarterly invoices did not alter that obligation. *See Nationwide*. Thus, Hipwell cannot avoid liability based upon his contract defenses.[11]

Hipwell also contends the Authority's lien, imposed pursuant to the MCTLA, is invalid because his account was not delinquent.

Section 3(a)(1) of the MCTLA provides that:

> All municipal claims, municipal liens, taxes, tax claims and tax liens which may hereafter be lawfully imposed or assessed on any property in this Commonwealth, and all such claims heretofore lawfully imposed or assessed within six months before the passage of this act and not yet liened, in the manner and to the extent hereinafter set forth, shall be and they are hereby declared to be a lien on said property, together with all charges, expenses, and fees incurred in the collection of any delinquent account, including reasonable attorney fees under subsection (a.1), added thereto for failure to pay promptly; and municipal claims and municipal liens shall arise when lawfully imposed and assessed and shall have priority to and be fully paid and satisfied out of the proceeds of any judicial sale of said property, before any other obligation, judgment, claim, lien, or estate with which the said property may become charged,

---

[11] Hipwell's defense of accord and satisfaction cannot stand. As recognized by this Court in *Nationwide*:

> There was no dispute during the period that the utility was accepting and endorsing the checks for the account as billed. A dispute is an essential element of accord and satisfaction. There was no dispute here over an unliquidated claim and the appellee is not estopped from correcting an error in billing.

*Id*. at 220.

10

or for which it may become liable, save and except only the costs of the sale and of the writ upon which it is made, and the taxes, tax claims and tax liens imposed or assessed upon said property.

53 P.S. § 7106(a)(1).

Section 1 of the MCTLA defines "municipal claim" as:

(1) the claim arising out of, or resulting from, a . . . service supplied . . . by a municipality, although the amount thereof be not at the time definitely ascertained by the authority authorized to determine the same, and a lien therefor be not filed, but becomes filable within the period and in the manner herein provided, (2) the claim filed to recover for . . . sewer rates . . . . A municipal claim shall be together with and shall include all penalties, interest, costs, fines, charges, expenses and fees, including reasonable attorney fees, as allowed by this act and all other applicable laws.

53 P.S. § 7101.

The JSOF states that the Authority requested payment of $2,925.00 by September 30, 2009 from Hipwell for unbilled sewer services it provided during the three prior years for Hipwell's three additional EDUs. Payment was not made.[12] Accordingly, the trial court properly concluded that Hipwell's account was delinquent.[13]

Relying on *Monroe Township Municipal Authority v. Augsburger*, 883 A.2d 718 (Pa. Cmwlth. 2005), Hipwell argues that his failure to pay while pursuing a "reasonable contest" does not render his account delinquent. In *Monroe*, the municipal authority appealed from a trial court order that struck legal fees from a

---

[12] Section 165-18 of the Code states: "The sewer use charge imposed by the Authority shall be payable quarterly in advance. Each calendar quarter shall be invoiced and payable within 30 days after the invoice date." *See* 42 Pa.C.S. § 6107.

[13] Notably, the MCTLA does not use the word "delinquent" when permitting the imposition of the lien. Instead, it provides for liens of "municipal claims" that may be "lawfully imposed or assessed on . . . property." 53 P.S. § 7106(a)(1). The MCTLA references "delinquent account[s]" only in the context of permitting recovery of attorney's fees "incurred in the collection of any delinquent account." 53 P.S. § 7106(a.1).

11

judgment arising out of the Augsburgers' contest of the municipal authority's claim for sewer connection fees. The Augsburgers contended that "the distance from their home to the sewer line exceeded the distance at which the applicable municipal ordinance mandated connection." *Id*. at 718. After the trial court concluded (and this Court affirmed) that the Augsburgers were required to pay the connection fees, the municipal authority entered judgment on its lien in the amount of the connection fees plus interest and attorney's fees. The Augsburgers refused to make any payment and filed a petition to strike the interest and attorney's fees from the judgment. In affirming the trial court, this Court stated: "we agree with common pleas that failure to pay while asserting a reasonable contest, such as that asserted by the Augsburgers, to the validity of the lien does not render an account delinquent. Hence, attorney's fees are not justified in this case." *Id.* at 719.

Hipwell argues that the MCTLA permits a lien to be imposed only when there is a delinquency. However, the MCTLA does not use the term delinquency when describing the requirements for imposing a valid lien. Because a "reasonable contest" only has relevancy when it comes to delinquency, the reasonable contest argument cannot stand in this context. Indeed, in *Monroe,* the lien was determined to be valid. Since the *Monroe* opinion only addresses delinquency in the context of attorney's fees, it does not support the invalidity of the Authority's lien in the instant matter. Simply put, the Authority provided sewer service, Hipwell accepted the service, the Authority invoiced its fees for the service, and Hipwell did not timely pay the fees.

Finally, Hipwell challenges the trial court's award of attorney's fees. Hipwell asserts that because his account was not delinquent, the MCTLA and the attorney's fees awarded thereunder are not applicable. We have already determined that the trial court correctly found Hipwell's account delinquent. Further, the trial

12

court concluded that Hipwell's contest of retroactive billing at standardized rates for services the Authority provided and Hipwell used was **not** reasonable.

This Court has held:

> Pursuant to [Section 20 of the MCTLA,] 53 P.S. § 7187, once the trial court rules on a municipal lien and a verdict is entered by the [C]ourt, the municipality shall be entitled to reasonable attorney fees pursuant to [Section 3 of the MCTLA] . . . . Reading both statutes in conjunction with one another, as required under the rules, once the trial court rules in favor of the municipality on its municipal lien, the challenge by the property owner is deemed to be meritless, therefore, entitling a municipality to an award of reasonable legal fees.

*Borough of Walnutport v. Dennis*, 13 A.3d 541, 547 (Pa. Cmwlth. 2010). In the instant action, the trial court ruled in the Authority's favor, finding Hipwell's challenge meritless and thus, properly imposed attorney's fees.

For all of the above reasons, the trial court's order is affirmed.

_____
ANNE E. COVEY, Judge

13

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Valley Forge Sewer Authority    :
:
v.      :
:
Brian Hipwell, Chris Hipwell,    :
David Tober and Wanda Warner,    :    No. 1924 C.D. 2013
Appellants    :

## O R D E R

AND NOW, this 31st day of July, 2015, the Chester County Common Pleas Court's October 8, 2013 order is affirmed.

_____
ANNE E. COVEY, Judge