IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| FC Station Square Landmark, LLC | : | |
| | : | |
| v. | : | No.  744 C.D. 2021 |
| | : | |
| City of Pittsburgh, and City of Pittsburgh Department of Mobility and Infrastructure, | : | Submitted:  May 17, 2022 |
| | : | |
| | : | |
| Appellants | : | |

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
                      HONORABLE LORI A. DUMAS, Judge
                      HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                                       FILED: June 24, 2022

The City of Pittsburgh (City) and the City of Pittsburgh Department of Mobility and Infrastructure (DOMI) appeal from the June 2, 2021 order of the Court of Common Pleas of Allegheny County (trial court), which reversed the decision of the DOMI denying the application for a curb cut permit filed by FC Station Square Landmark, LLC (FC Station Square).  We vacate and remand to the trial court for further proceedings.

**Background**

The trial court, based predominately on the stipulation of facts filed by the parties, recounted the gist of this case as follows:

> This matter . . . deal[s] with an application to make modifications to an entrance to Station Square from the

Smithfield Street Bridge. The entrance at issue is right-in only with a 47[-]foot driveway. It allows vehicles traveling outbound over the Smithfield Street Bridge to enter the Station Square development, but it does not allow traffic to exit the development onto Smithfield Street. [] FC Station Square proposes to increase the driveway width by six feet and allow right-in, right-out traffic. After completion, outbound traffic would be permitted to access the entire development via right turn from Smithfield Street and vehicles would be permitted to exit the development by making a right turn onto Smithfield Street. . . .

This action was initiated in early 2019 when FC Station Square submitted a Highway Occupancy Permit ([]HOP[]) application to the Pennsylvania Department of Transportation ([]PennDOT[]) for approval to widen the entrance at issue. PennDOT requested documentation that the City reviewed the plans. [The] DOMI advised FC Station Square to submit a curb cut application to the City for approval. [FC Station Square submitted the application on October 2, 2019. Reproduced Record (R.R.) at 12a.] [The] DOMI denied that application [on February 11, 2020, because "[t]he proposed curb cut introduces safety concerns for pedestrians and vehicles on Smithfield Street, **[t]he existing 47' curb already exceeds the maximum allowed by [the City of Pittsburgh, Pa., Code of Ordinances** (Code of Ordinances)," and "[t]he proposed change would increase the cut by an additional 6' for a total of 53." R.R. at 14a].

(Trial court op. at 1-3) (emphasis added).

FC Station Square filed an appeal with the Director of the DOMI (Director). On July 16, 2020, five months after the DOMI initially denied FC Station Square's application for a curb cut permit, and ten months after the application was submitted, the Director denied the appeal without a hearing. Notably, the decision of the Director did not contain any findings of fact. Instead, the Director's decision denying FC Station Square a permit stated the "**existing 47' curb cut already exceeds the maximum allowed by the Code [of Ordinances**]." (R.R. at 18a) (emphasis

2

added). The decision did not cite to any actual provision of the Code of Ordinances that provides for the maximum curb cut allowance.

Then, on August 6, 2020, the DOMI promulgated a regulation (Regulation) related to driveway design curb cut requirements. In the Regulation, it is stated that the maximum curb cut for a commercial property, such as FC Station Square, is 24 feet. (R.R. at 94a.)

In the meantime, FC Station Square appealed the Director's decision to the trial court in August of 2020. During the course of the proceedings before the trial court, the DOMI referenced what can best be described as a "brochure" or "pamphlet" that was issued in February 2020 (Brochure). In the Brochure, the DOMI explained the steps for applying for and obtaining a curb cut permit under the Code of Ordinances and represented, as a "general requirement," that the "[m]aximum curb cut width is 36 feet." (R.R. at 87a.) The DOMI also referred to the Regulation. **Notably, both the Brochure and the Regulation appeared to have been issued and/or enacted *after* FC Station Square submitted its application for a permit on October 2, 2019**. *See Boron Oil Co. v. Kimple*, 284 A.2d 744, 746 (Pa. 1971) (noting that an ordinance or regulation, in order to be given retroactive effect, must be "pending" as of the date of the petitioner's application for a building permit); *Appeal of Sawdey*, 85 A.2d 28, 30 (Pa. 1951) ("Retroactive legislation is so offensive to the Anglo-Saxon sense of justice that it is never favored.").

Moreover, after the DOMI filed its appeal to the trial court, the DOMI informed FC Station Square that the modified access posed specific safety concerns for pedestrians and vehicles on Smithfield Street. In response to the safety concerns, FC Station Square prepared an access memorandum. FC Station Square proposed to install signage to address the concerns related to the changing lane use patterns from the

3

Smithfield Street Bridge to West Carson Street. Christopher A. Prisk, FC Station Square's traffic consultant, who is also a professional engineer and a certified professional traffic operations engineer, concluded that the signage plan safely and adequately conveys lane and time restrictions to trucks and vehicles exiting onto Smithfield Street at the point that they need to make the determination. He further concluded that safety and access advantages outweigh concerns about egress route confusion that is intended to be rectified with the installation of the signage. (Trial court op. at 3-4.)

The City's Municipal Traffic Engineer is a licensed engineer in the state of Pennsylvania. He concluded that there is not a way to safely and adequately convey lane and time restrictions to trucks and vehicles exiting onto Smithfield Street at the point that they need to make the determination. He did not cite to any regulation or applicable industry standard in reaching his opinion. *Id.*

By order dated June 2, 2021, after receiving the parties' stipulation of facts and exhibits, proposed findings of fact and conclusions of law, and legal memoranda and arguments, the trial court reversed the decision of the Director. In doing so, the trial court ostensibly concluded that FC Station Square satisfied all the regulatory requirements imposed by PennDOT with regard to curb cuts, save for any additional and applicable legal restrictions imposed by the City.

Initially, PennDOT's regulation at 67 Pa. Code §443 pertains to applications for a HOP and addressed the application process involved here. *See id.* Section 443(j) provides as follows:

> (j) Review by municipalities, planning commissions, and zoning boards. **Review by municipalities, planning commissions, and zoning boards shall comply with the following**:

4

(1) Certain local governing bodies wish to review driveway applications within their jurisdictions.

(2) A listing of these municipalities and local agencies is available from the appropriate district office.

(3) **Each application for an access driveway within one of these jurisdictions must be accompanied by evidence which indicates that the location and type of access being requested has been reviewed by that municipality or agency**.

(4) [PennDOT] will consider any comments or recommendations resulting from this review prior to approving the access permit.

67 Pa. Code §443(j) (emphasis added).

Further, the regulation at 67 Pa. Code §441.8, generally relates to a HOP and sets forth the specific and detailed driveway design requirements for access to PennDOT roads, including site distance and curbing. *See id*.

In its opinion, the trial court correctly observed that PennDOT's regulation, located at 67 Pa. Code §441.6, "provides that local municipalities can impose more stringent requirements if enacted by ordinance." (Trial court op. at 4.) In relevant part, 67 Pa. Code §441.6 states as follows:

The following conditions shall apply to permits issued under the provisions of this chapter:

. . . .

(2) **Additional restrictions**. All work authorized by the permit shall be subject to the following:

(i) All applicable laws, rules, and regulations, including but not limited to the following:

. . . .

(F) **Ordinances enacted by local municipalities [that] contain more stringent minimum safety requirements than this chapter**. . . .

(ii) Any rights of any person.
(iii) The conditions, restrictions, and provisions of the permit.

67 Pa. Code §441.6(2)(i)(F)(ii)-(iii) (emphasis added).

Next, turning to the municipal law of the City of Pittsburgh, the trial court cited section 413.02 of Title Four, Article 1 of the Code of Ordinances,[1] which states:

§413.02—Sidewalk and Curb Bond and Permit Required; Work Approval.

(a) No person shall construct, reconstruct, repair, cut, alter or grade any sidewalk curb or driveway in the public right-of-way without first obtaining a permit from the [DOMI].

(b) All construction, reconstruction, repair, cutting, alteration or grading shall be done in the manner specified by the [DOMI] and subject to its approval.

Code of Ordinances, Article I, Title Four, §413.02 (1979).

In reversing the decision of the DOMI, the trial court proffered the following rationale:

**The City has not adopted an ordinance that provides for the maximum width of curb cuts**. . . . Further, the City does not provide for any driveway design requirements let alone design requirements that are more stringent than the design requirements set forth in [PennDOT's] [r]egulations. The Court finds FC Station Square's expert to be more credible than the City's. The City has not provided evidence that the modified access would harm the public interest, safety, and convenience of the right-of-way. FC Station Square provided substantial evidence that the modified access complies with state regulations as well as universally accepted traffic industry standards. Therefore, [the] DOMI

---

[1] The Code of Ordinances should not be confused with the Pennsylvania Code. The former codifies the ordinances of the City of Pittsburgh, including its home rule charter, while the latter contains the promulgated regulations of state agencies, such as PennDOT.

> erred as a matter of law and abused its discretion in denying the curb cut application. [The] DOMI's decision is reversed and the curb cut application for the modified access is approved.

(Trial court op. at 5) (emphasis added).

The City and the DOMI (collectively, the DOMI) then filed an appeal to this Court. The DOMI raises two issues. First and foremost, it contends that the trial court erred when it concluded that the City's ordinance here was not sufficient because the actual limits on the curb cut length was not in the Code of Ordinances itself, but rather, was located in the Regulation adopted pursuant to the Code of Ordinances. The DOMI submits that there is no case law stating that ordinances adopted pursuant to 67 Pa. Code §441.6(2)(i)(F) cannot also incorporate regulations. The DOMI explains that these sorts of technical requirements belong in regulations rather than in the Ordinance as it is technical documents that should be crafted by subject matter experts rather than City Council. The DOMI contends that the new regulation promulgated by the DOMI in August of 2020 was adopted pursuant to the Code of Ordinances, section 413.02, and limits the maximum length for a commercial curb cut to 24 feet in length. The Regulation, the DOMI asserts, is enforceable even though it is not specifically set forth in an "ordinance." Alternatively, the DOMI argues that even if we find that the Regulation must be set forth in a duly enacted ordinance, the 36-foot restriction contained in Ordinance No. 169 of 1933 (Ordinance)[2] is still in place as it has never been properly repealed or revoked. The DOMI admits that the Ordinance was not presented to the trial court and asks this Court to take judicial notice of it for purposes of appellate review.

---

[2] In pertinent part, the Ordinance commands that "[s]ection 1 of said Ordinance be amended by substituting for Item (e) the following: (e) cutting curbstones for each driveway per foot, and no permit shall be issued for driveways in excess of 36 feet in width." (R.R. at 119a-20a.)

7

In response, FC Station Square argues that the "policy documents" upon which the DOMI relies—*i.e.*, the Regulation and the Brochure—were adopted many months after the curb cut application was denied and they cannot be applied retroactively. It further contends that the Ordinance was superseded and repealed, and it should be stricken from the record,[3] and the DOMI waived its right to argue the applicability of the Ordinance because it did not raise it before the trial court.[4]

---

[3] On November 23, 2021, FC Station Square filed an application for relief in this Court, seeking to strike the Ordinance from the certified record. For support, FC Station Square argued that, under Pennsylvania law, the Ordinance could not be included in the reproduced record because it was not contained within—or otherwise made part of—the certified record. FC Station Square further contended that this Court, while conducting review on appeal, can only consider documents that are contained in the certified record. According to FC Station Square, the DOMI also failed to reference the Ordinance during the proceedings before the trial court.

On December 7, 2021, the DOMI filed an answer, asserting that this Court is legally obligated to take judicial notice of the Ordinance pursuant to section 6107(a) of the Judicial Code, 42 Pa.C.S. §6107(a). The DOMI also averred that it referenced the Ordinance implicitly, and through cross-reference, in its proposed findings of fact and conclusions of law, wherein it cited the Brochure, proposed a legal determination that the maximum curb cut width is 36 feet in the City, and requested the trial court to take judicial notice of the Brochure. (R.R. at 83a.) The DOMI asserted that its proposed legal determination and proposed finding that the City has a 36-foot maximum for curb cuts, ultimately stems and "comes from the [] Ordinance." (DOMI Answer, ¶6.)

On December 13, 2021, this Court issued a per curiam order denying FC Station Square's application for relief, seeking to strike the Ordinance from the reproduced record. In so determining, we quoted section 6107(a) of the Judicial Code, noting that the statutory provision mandates that "ordinances of municipal corporations of this Commonwealth shall be judicially noticed." (Order, 12/13/2020, at 1) (quoting 42 Pa.C.S. §6107(a)).

[4] In its second issue, the DOMI argues that the trial court abused its discretion in overturning the City's determination that increasing the width of the curb cut was a hazard to public safety. In response, FC Station Square contends that the trial court considered evidence submitted by both parties' engineers and found that the report submitted by FC Station Square's traffic engineering expert was more credible than the City's, and that FC Station Square's expert report, in contrast to the City's, contained substantial evidence that the modified access would not cause detrimental safety impacts. It maintains these credibility determinations should not be disturbed on appeal. Due to our disposition, we decline to address this issue on appeal.

8

**Discussion**

In the unique procedural background of this case, the predominate issue presented in this appeal is whether this Court should take judicial notice of the Ordinance.

**Whether this Court Should Take Judicial Notice of the Ordinance**

Before this Court,[5] the DOMI, among other contentions, argues that "the 36[-]foot restriction set forth in [the] Ordinance . . . is still in place as it has not been properly revoked and FC Station Square cannot expand its non-conforming curb cut." (DOMI Br. at 17-18.) The DOMI argues that the trial court erred in reversing the decision of the Director because the Ordinance is valid and enforceable under 67 Pa. Code §441.6 and, as such, the Director had a legitimate legal basis to deny FC Station Square's application for a curb cut permit.

Titled "Judicial notice of certain local government ordinances," section 6107 of the Judicial Code states if full:

> (a) *General rule.*-- **The ordinances of municipal corporations of this Commonwealth shall be judicially noticed**.
>
> (b) *Manner of proving ordinances.*-- **The tribunal may inform itself of such ordinances in such manner as it may deem proper** and the tribunal may call upon counsel to aid it in obtaining such information.

---

[5] Where a case is submitted on stipulated facts, our standard of review is limited to assessing whether the trial court committed an error of law in its rulings; as with all questions of law, our scope of review is plenary. *See Triage, Inc. v. Prime Insurance Syndicate, Inc.*, 887 A.2d 303, 306 (Pa. Super. 2005). To the extent a trial court engages in factfinding, our standard of review is to determine whether the findings of the trial court are supported by competent evidence and whether an error of law was committed by the trial court in applying the law to those facts. *See Swift v. Department of Transportation*, 937 A.2d 1162, 1167 n.5 (Pa. Cmwlth. 2007).

(c) *Construction of ordinances.*-- The construction of such ordinances shall be made by the court and not by the jury and shall be reviewable.

42 Pa.C.S. §6107 (emphasis added).

Pursuant to this statutory section, our courts take judicial notice of the ordinances of local governmental entities within this Commonwealth. *See, e.g.*, *Seitel Data, Ltd. v. Center Township*, 92 A.3d 851, 862-63 (Pa. Cmwlth. 2014); *Adams Outdoor Advertising, Ltd. v. Department of Transportation*, 860 A.2d 600, 606-07 (Pa. Cmwlth. 2004). Significantly, the authority granted to courts via section 6107 of the Judicial Code is not limited to the trial court or at the trial court level. In fact, both this Court and our Superior Court have recognized that the intermediate appellate courts can take judicial notice of ordinances and other laws to the same extent as a trial court, even if such judicial notice occurs during the appellate stage of the litigation. *See Valley Forge Sewer Authority v. Hipwell*, 121 A.3d 1164, 1168 n.5 (Pa. Cmwlth. 2015); *see also Berman v. Pennsylvania Convention Center Authority*, 901 A.2d 1085, 1088 (Pa. Cmwlth. 2006) (noting that a court may "take judicial notice at any stage of a proceeding, including the appellate stage"); *Goff v. Armbrecht Motor Truck Sales, Inc.*, 426 A.2d 628, 630 n. 4 (Pa. Super. 1980) ("An appellate court may take judicial notice of a fact to the same extent as a trial court.").

For example, in *Valley Forge Sewer Authority*, this Court affirmed an order from a court of common pleas in favor of a municipal sewer authority on its municipal lien claim, together with interest and attorneys' fees, because the authority provided sewer service to certain landowners; the landowners accepted the service; the authority invoiced the landowners fees for the service; and the landowners did not timely pay the fees. On appeal, the landowners, as part of their contractual defense to the authority's lien claim, asserted that the authority could not find them delinquent for the fees because the authority committed a unilateral mistake in characterizing the

10

nature of their properties. In rejecting this argument, this Court cited a provision from the authority's code of rules and regulations to conclude that the authority properly classified the landowners' property because the authority never obtained notice of a change in the use of the properties. In so ruling, we stated: "Although it does not appear to be part of the record, this Court takes judicial notice. . . of the [authority's] [c]ode." 121 A.3d at 1168 n.5.

In other cases, albeit in what could arguably be construed as *dicta*, this Court has suggested that we may take judicial notice of ordinances in the situation where the ordinances were not cited or included in the certified record to this Court. *See Dream Mile Club, Inc. v. Tobyhanna Township Board of Supervisors*, 615 A.2d 931 (Pa. Cmwlth. 1992) (noting that, on the record presented, there was "nothing [to] indicate[] that the developers or the objectors made the zoning ordinance available to the trial court," and remanding to the trial court for consideration of the merits of the zoning law claims in light of the ordinance); *McClimans v. Board of Supervisors of Shenango Township*, 529 A.2d 562, 574 (Pa. Cmwlth. 1987) ("It is true, as [the] [a]ppellants point out, that while the comprehensive plan was alluded to several times during the hearing, it was never formally introduced into evidence. Further, it was never made part of the record certified to us. However, we are of the opinion that we are required to take judicial notice of the comprehensive plan.").

Here, applying the above case law, and consistent with the plain text of section 6107 of the Judicial Code and our previous *per curiam* order in this matter, we take judicial notice of the Ordinance. Therefore, we vacate the order of the trial court and remand to the trial court to review the Ordinance and assess whether the Director abused her discretion or committed an error law in denying FC Station Square's application for a curb cut permit on the ground that it exceeded the permissible width

11

under the Code of Ordinances. We leave it to the trial court to decide, in the first instance, (1) whether the DOMI waived its argument regarding the applicability of the Ordinance, *see* R.R. at 83a-87a, and, if not, (2) whether the Ordinance was applicable at the time the DOMI denied the application, *e.g.*, whether the Ordinance was in existence and/or has been repealed, (3) whether the Ordinance otherwise remains valid and enforceable, and/or (4) whether the Ordinance constitutes sufficient proof that the City has a 36-foot limitation for curb cuts.[6]

## Conclusion

For the above-stated reasons, we vacate and remand to the trial court to consider the application (or potential application) of the Ordinance in reviewing the Director's denial of FC Station Square's application for a curb cut permit.[7]

_____
PATRICIA A. McCULLOUGH, Judge

---

[6] Otherwise, we agree with the trial court that both the Brochure and Regulation are not the functional equivalent of an "ordinance" for purposes of PennDOT's regulation at 67 Pa. Code §441.6. We further agree with FC Station Square that the Brochure and Regulation cannot be given retroactive effect and, as such, cannot serve as a valid legal basis upon which the Director could deny the application for a curb cut.

[7] Given the procedural posture of this case, we deny the Application for Emergency Relief to Move Argument Date filed by the DOMI on May 16, 2022, requesting that this Court continue the argument session. On May 16, 2022, this Court entered a *per curiam* order cancelling the argument date and directing that the case will be submitted on briefs.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

FC Station Square Landmark, LLC    :
    :
       v.    :   No.  744 C.D. 2021
    :
City of Pittsburgh, and City of    :
Pittsburgh Department of Mobility    :
and Infrastructure,    :
                  Appellants    :

## ***ORDER***

AND NOW, this 24th day of June, 2022, the June 2, 2021 order of the Court of Common Pleas of Allegheny County (trial court) is vacated and the case is remanded to the trial court for further proceedings consistent with the attached opinion.  The Application for Emergency Relief to Move Argument Date filed by the City of Pittsburgh and the City of Pittsburgh Department of Mobility and Infrastructure on May 17, 2022, is denied.

Jurisdiction relinquished.

_____
PATRICIA A. McCULLOUGH, Judge