IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania          :
                                      :
              v.                      :
                                      :
Central Penn Equity Trust,            :       No. 424 C.D. 2022
                    Appellant         :       Submitted: May 19, 2023


BEFORE:    HONORABLE ANNE E. COVEY, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE STACY WALLACE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                                   FILED: September 6, 2023


              Central Penn Equity Trust (Appellant) appeals from the Lancaster
County Common Pleas Court's (trial court) March 29, 2022 order finding Appellant
guilty of violating Section 304.7 of the 2015 International Property Maintenance
Code (2015 IPMC) (relating to roofs and drainage) (IPMC Section 304.7).[1]
Appellant presents two issues for this Court's review:[2] (1) whether the trial court
erred by finding that the initial purpose for the City of Lancaster's (City) Housing
Inspector Eric Delgado's (Inspector) entry onto Appellant's rental property located
at 407 Chester Street, Lancaster, Pennsylvania (Property) was lawful; and (2)

_____

    [1] The parties did not include the 2015 IPMC in the record. However, "'Courts may take
judicial notice of local government ordinances.' *In re Appeal of Moyer*, 978 A.2d 405, 407 n.2
(Pa. Cmwlth. 2009); *see also* [Section 6107(a) of the Judicial Code,] 42 Pa.C.S. § 6107(a) ('[T]he
ordinances of municipal corporations of this Commonwealth shall be judicially noticed.')." *Valley
Forge Sewer Auth. v. Hipwell*, 121 A.3d 1164, 1168 n.5 (Pa. Cmwlth. 2015). Because the 2015
IPMC was incorporated in Chapter 223 of the Property Maintenance portion of the City of
Lancaster, Pennsylvania, Code of the City of Lancaster (2018), this Court takes judicial notice of
the 2015 IPMC.
    [2] This Court reordered Appellant's issues for clarity of discussion herein.

whether the trial court erred by concluding that the IPMC or the Property Maintenance portion of the City of Lancaster, Pennsylvania, Code of the City of Lancaster (City Code) authorized Inspector to delegate his duty to a certified roof inspector in the absence of an unusual technical concern. After review, this Court affirms.

**Facts**

Appellant's Property was subject to Chapter 238 of the City Code (relating to rental property).[3] *See* Reproduced Record (R.R.) at 30a, 48a. On January 28, 2021, an adjacent neighbor (Neighbor) lodged a complaint with the City regarding concerns that conditions at the Property affected his/her residence.[4] That same day, Inspector visited the Property and discovered a number of City Code violations.[5] Relevant here, Inspector observed a tree on the Property growing over the flat second-story roof of Appellant's building. From the ground, Inspector was unable to determine whether the tree had damaged Appellant's roof.

Also on January 28, 2021, the City sent Appellant a Notice of Violations (NOV), directing Appellant to, *inter alia*, "[h]ave a [q]ualified [c]ontractor inspect the roof to ensure it has not sustained damage from the tree grown [sic] tree[, and s]ubmit the Roof Certification included in [this NOV] to [the City's Bureau of Code Compliance and Inspections, Housing Inspections O]ffice."

---

[3] The City adopted Chapter 238 of the City Code on February 10, 2009, by Ordinance No. 1-2009. On November 13, 2018, the City amended multiple sections of Chapter 238 of the City Code. *See* Appellant's Production of Documents, Ex. B. The City amended Chapter 238 of the City Code in its entirety on September 27, 2022, by Ordinance No. 18-2022. *See* ecode360.com/13535859 (last visited Sept. 5, 2023). References herein are to the version of Chapter 238 of the City Code that was in effect when the City issued the Notice of Violation in January 2021.

[4] Neighbor is not identified in the record before this Court.

[5] Because Appellant satisfactorily addressed the other violations Inspector found at the Property, they are not at issue in this appeal.

R.R. at 90a; *see also* R.R. at 48a-54a. The NOV declared that Appellant must abate that violation by February 10, 2021, and that Inspector would revisit the Property on March 3, 2021. *See id.*

On March 3, 2021, Inspector attempted to reinspect the Property, but Appellant was not present and no one answered the door. *See* R.R. at 55a-56a, 96a. Because the City had not received Appellant's Roof Certification, and Inspector was still unable to determine whether the roof was damaged, on March 24, 2021, Inspector sent Appellant a notice scheduling reinspection for April 9, 2021. *See* R.R. at 55a, 95a. Again, on April 9, 2021, the City had not received Appellant's Roof Certification, Appellant was not at the Property when Inspector visited, and no one answered the door. *See* R.R. at 55a-57a, 96a. On May 5, 2021, Inspector sent Appellant a letter scheduling reinspection for June 15, 2021; however, on June 15, 2021, Appellant was again not present and Inspector could not see the roof. *See* R.R. at 56a-57a, 67a-68a, 96a. In interim telephone conversations with Appellant's trustee and beneficiary Kevin Kann (Kann), Inspector informed Kann that he would cite Appellant for violating IPMC Section 304.7 if the City did not receive Appellant's Roof Certification. *See* R.R. at 57a, 73a. Kann responded that he did not believe Appellant should have to expend funds for a roof inspection without evidence that its roof was damaged. *See* R.R. at 56a-57a, 71a-72a.

On July 23, 2021, Inspector issued Appellant a non-traffic citation (Citation) for Appellant's "failure to have a qualified contractor inspect the roof to ensure it is [sic] not sustained damage from the tree[,]" and failure to submit the Roof Certification to the City. R.R. at 2a; *see also* R.R. at 57a-58a.

On August 19, 2021, the Lancaster County District Attorney issued a Summons for Summary Case - Non-Traffic to Appellant for violating IPMC Section 304.7, and Appellant pled not guilty. *See* R.R. at 9a, 11a. On September 27, 2021, a Magisterial District Judge (MDJ) conducted a hearing, at which Inspector

3

testified.[6] The MDJ adjudicated Appellant guilty of violating IPMC Section 304.7, and assessed Appellant a $300.00 fine plus costs. *See* R.R. at 12a. On October 19, 2021, Appellant appealed to the trial court.

The trial court held a *de novo* hearing on March 29, 2022, at which Inspector testified. Kann attended the hearing, offered a photograph of the subject tree,[7] and declared that Appellant removed the tree shortly after it received the NOV.[8] *See* R.R. at 63a-64a, 72a, 97a. At the conclusion of the hearing, the trial court found Appellant guilty of violating IPMC Section 304.7, ordered Appellant "to provide the necessary [R]oof [C]ertification in order to come into compliance with the [City Code]," and assessed a $300.00 fine and costs. R.R. at 78a; *see also* R.R. at 6a, 12a-13a. Appellant appealed to this Court.[9]

By June 14, 2022 order, amended June 17, 2022, the trial court instructed Appellant to file a Concise Statement of Errors Complained of on Appeal pursuant to Pennsylvania Rule of Appellate Procedure (Rule) 1925(b) (1925(b) Statement). On July 7, 2022, Appellant filed its 1925(b) Statement. On November

---

[6] Appellant did not attend the MDJ hearing. *See* R.R. at 6a, 8a.

[7] Kann declared that he took the photograph within days after Appellant received the NOV and, thus, it depicted the tree as Inspector would have seen it on January 28, 2021. *See* R.R. at 72a. However, Inspector could not verify that the photograph was an accurate reflection of the tree as he saw it on January 28, 2021. *See* R.R. at 63a, 67a, 72a.

[8] Kann admitted that the City did not direct Appellant to remove the tree; rather, he took it down "in good faith[.]" R.R. at 75a. Notably, although Kann challenges the City's authority to require Appellant to obtain a Roof Certification that is "in excess of $200[.00,]" Kann spent $625.00 to have the tree removed. R.R. at 72a.

[9] "This Court's review of a 'trial court's determination on appeal from a summary conviction is limited to whether there has been an error of law or whether competent evidence supports the trial court's findings.' *Commonwealth v. Hall*, 692 A.2d 283, 284 n.2 (Pa. Cmwlth. 1997)." *Commonwealth v. Nicely*, 988 A.2d 799, 803 n.3 (Pa. Cmwlth. 2010). By July 17, 2023 Order, this Court directed Appellant to submit complete versions of City Code Chapters 223 and 238 that were in effect on January 28, 2021, which Appellant furnished to the Court on July 19, 2023.

14, 2022, the trial court issued its opinion pursuant to Rule 1925(a) (Trial Court 1925(a) Opinion).

## Discussion

Initially, Section 103.3 of the City Code authorizes the City's enforcement officers and inspectors to "enforce the provisions of the [City Code]." City Code § 103.3 (R.R. at 82a). When the City issued the NOV in January 2021, Chapter 223 of the City Code governed property maintenance in the City.[10] Section 223-2 of the City Code adopted and incorporated IPMC Section 304.7, *see* City Code § 223-2 (R.R. at 81a), which provided:[11]

> **Roofs and drainage.** The roof and flashing shall be sound, tight[,] and not have defects that admit rain. Roof drainage shall be adequate to prevent dampness or *deterioration* in the walls or interior portion of the structure. Roof drains, gutters[,] and downspouts shall be maintained in good repair and free from obstructions. Roof water shall not be discharged in a manner that creates a public nuisance.

IPMC § 304.7 (R.R. at 88a) (emphasis in original).[12]

---

[10] Chapter 223, Section 1 of the City Code reflects that

> the intent and purpose of [] [C]hapter [223 of the City Code (Property Maintenance) is] to adopt a modern property maintenance code which will prescribe effective standards and minimum requirements for the safeguarding of persons and buildings located in the [City] and protect the public health and safety of citizens and visitors against the hazards of inadequate, defective[,] or unsafe existing structures.

City Code § 223-1, Appellant's Production of Documents Ex. A at 1. The City adopted the IPMC, subject to additions, deletions, and modifications referenced therein. *See* Chapter 223, Section 3 of the City Code, City Code § 223-3, *id*. at 2.

[11] IPMC Section 304.7 applicable to the City Code in January 2021 remained the same in subsequent IPMC versions (i.e., 2018 and 2021).

[12] codes.iccsafe.org/content/IPMC2015/chapter-3-general-requirements (last visited Sept. 5, 2023).

5

Chapter 238, Section 2.A.(i.) of the City Code also mandated that residential rental property owners shall "[k]eep and maintain all [rental units (]Units[)] in compliance with all applicable codes[] [and] ordinances . . . , including but not limited to [Chapter 223]" and, by incorporation, the 2015 IPMC's property maintenance requirements.[13]  City Code § 238-2.A.(i.), Appellant's Production of Documents Ex. B at 5.

Further, Chapter 238, Section 9.E of the City Code authorized the City's Code official to issue NOVs to owners whose rental properties violated City Code Chapter 223.  *See* City Code § 238-9.E, Appellant's Production of Documents Ex. B at 11.  Section 106.3 of the City Code provided that a City Code official may institute appropriate legal proceedings for an owner's failure to abate a violation, which could result in a $100.00 to $1,000.00 fine for a first offense.  *See* City Code § 106.3 (R.R. at 82a).

Appellant first argues that the trial court erred by finding that the initial purpose for Inspector's entry onto the Property was lawful when the circumstances were factually impossible.  Specifically, Appellant asserts that once Inspector determined that the subject tree did not appear to negatively impact Neighbor's property, Inspector's inquiry should have ended without further inspection of Appellant's Property.

Chapter 238, Section 10.A of the City Code required rental property owners to afford City Code officials access to inspect rental properties.  *See* City Code § 238-10.A, Appellant's Production of Documents Ex. B. at 12.  According to Chapter 238, Section 10.E of the City Code, in addition to the initial inspection after an owner files a rental property license application,

> more frequent **periodic inspections may occur** as deemed
> necessary by City Code [o]fficials, **for reasons such as**

---

[13] *See* City Code § 238-9.E, Appellant's Production of Documents, Ex. B at 11.

**reasonable threats to the safety of occupants** of the Unit, **reasonable threat to the safety of users of** . . . **adjoining properties**[,] **and reasonable concern that the Unit is the subject of additional code violations**.

City Code § 238-10.E, Appellant's Production of Documents Ex. B. at 13 (emphasis added). Chapter 238, Section 9.E of the City Code authorized the City's Code official to issue notices of violation "[**w**]**henever the** [**City C**]**ode** [**o**]**fficial determines** that the Unit is in violation of the City's Property Maintenance Code [(i.e., Chapter 223 and the 2015 IPMC)]." City Code § 238-9.E, Appellant's Production of Documents Ex. B at 11 (emphasis added).

Inspector described:

A. . . . [W]e do the inspection and based on what the complaint is we try to make a determination on visible evidence. So I'm there, I'm analyzing. I'm observing to see if, in fact, there is a problem that needs to be dealt with, remedied. If not, then we can disregard it as unfounded.

Q. So you initially right off the bat take all your time to looking [sic] into what specifically that complaint is about before moving on to anything else?

A. Yes. As a practice, when we go to inspect the property, we actually inspect the exterior of the property. It would be the same thing as if I received an interior complaint about a flooded basement. As I'm moving through the property, I'm going to observe if there's smoke alarms, if they have carbon alarms, is there any damage to the wall, any damage to the ceiling. If I see infestation possibilities, a lot of roaches, mice, then I have to make note of what I see.

R.R. at 65a-66a.

Chapter 238, Section 10.E of the City Code authorized Inspector to inspect the Property upon the Neighbor's complaint. Section 9.E thereof obligated Inspector to bring any and all City Code violations to Appellant's attention, which Inspector did here. Appellant did not provide any contrary support for its argument

7

that Inspector could only cite Appellant for violations about which complaints are lodged. The trial court held:

> Based upon the testimony at the summary appeal hearing, the [trial] court found that [] Inspector was at the Property for the lawful purpose of responding to a valid complaint and that during [] Inspector's inspection of the Property, he uncovered a number of violations, including the violation at issue of [IPMC] Section 304.7 . . . adopted by . . . Section 223[] [of the City Code], relative to roof and drainage maintenance. [] Inspector viewed an overgrown tree on the Property, which was growing over the Property's roof, an obstruction and [potential] violation of the IPMC which states that "[r]oof drains, gutters and downspouts shall be maintained in good repair and free from obstructions." [IPMC] Section 304.7. Thus, [] Inspector's reason for entry onto the Property was not unlawful[,] nor was the basis of authority to conduct the inspection invalid as Appellant argues.

Trial Ct. 1925(a) Op. at 4-5 (R.R. at 33a-34a). This Court discerns no error in the trial court's reasoning.

Appellant next contends that the trial court erred by concluding that the City Code authorized Inspector to delegate his duty to a certified roof inspector because Inspector's "demand for an expert report of the roof was not in accord with the statute of the IPMC on inspections[,]" i.e., there was no unusual technical concern about the roof. Appellant Br. at 12

> Inspector testified on the City's behalf at the trial court hearing:
>
> A [R]oof [C]ert[ification] is an in-house certification that the City has in order to try to get compliance. So essentially I can use [IPMC Section] 304[.]7 to have a roof checked **if there's an issue with gutters and so on** and so forth, **I can** then, **based on that and potential damage**, **require a** [**R**]**oof** [**C**]**ertification**, so a professional roofer or a qualified contractor can come inside, take a look and verify whether that's in good standing or not.

R.R. at 68a (emphasis added). Inspector expounded:

8

> [**Roof C]ertification would be required** in the case that we went into a property and we saw damage, meaning we had the right to go into a property to see damage, or **under the circumstances in which we could not verify from our position whether the roof was damaged or not**, and that would be contingent upon something that could possibly be creating a problem for that roof.

R.R. at 54a (emphasis added). He added that the City's inspectors "do not go on roofs" because they do not have the necessary training or equipment, so "[they] rely on the [R]oof [C]ertification whenever [they] have an issue that [they] can't verify." R.R. at 61a; *see also* R.R. at 66a-67a.

> Inspector further detailed:
>
> A. . . . I was sent out [] to inspect [the P]roperty to see if, in fact, there was an overgrown tree, which there was. And then **based on the direction of the tree**, [I] requested that [Appellant] would [sic] have the roof checked to make sure there was no damage to the roof.
>
> Q. Was the tree growing over on top of the roof?
>
> A. Yes. So the tree itself was **fairly close to the [P]roperty**,[14] and it was **leaning** over towards the left, **towards the roof** of the [P]roperty when [I] went into the backyard.
>
> Q. Were you able to determine whether the roof was in good condition from the ground?
>
> A. No. I could not.
>
> . . . .
>
> Q. Okay. And, again, the tree was on top of it or was it growing over it?
>
> A. Well, the tree was growing over it.
>
> Q. Now, just to be absolutely clear on this, because I think the whole case turns on this. Were you able to determine

---

[14] It is unclear from the context whether, here, Inspector was referring to Neighbor's property or the subject Property.

on that visit on [January] 28th whether the roof was damaged or not?

A. No, I could not.

Q. So you asked him to do that?

A. Yes.

R.R. at 52a-53a (emphasis added). Inspector added:

> I was not able to ever even look inside, and I didn't have grounds to look inside unless we believed that there was water leaking into the [P]roperty. What [**I was**] **asking** was **to make sure that** the tree was not damaging the roof itself. . . . I could not verify . . . whether **the roof was in good standing** [(i.e., compliant with IPMC Section 304.7] or not.

R.R. at 56a (emphasis added).

Section 104.2 of the 2015 IPMC, incorporated into the City Code and in effect when Inspector issued the NOV, generally declared:

> **The *code official* shall make all of the required inspections**, **or shall accept reports of inspection** by *approved* agencies or individuals. Reports of such inspections shall be in writing and be certified by a responsible officer of such *approved* agency or by the responsible individual. The *code official* is authorized to engage such expert opinion as deemed necessary to report on unusual technical issues that arise, subject to the approval of the appointing authority.

2015 IPMC § 104.2 (bold emphasis added).[15] Section 104.1 of the 2015 IPMC further provided:

> The *code official* is hereby authorized and directed to enforce the provisions of this [IPMC]. The *code official* **shall have the authority to render interpretations of this [IPMC] and to adopt policies and procedures in order to clarify the application of its provisions**. Such

---

[15] codes.iccsafe.org/content/IPMC2015/chapter-1-scope-and-administration (last visited Sept. 5, 2023).

interpretations, policies[,] and procedures **shall be in compliance with the intent and purpose of this** [**IPMC**]. Such policies and procedures shall not have the effect of waiving any requirements specifically provided for in this [IPMC].

2015 IPMC § 104.1 (bold emphasis added).[16]  Section 101.3 of the 2015 IPMC specified the IPMC's intent:

This [IPMC] shall be construed to secure its expressed intent, which is **to ensure public health**, **safety**[,] **and welfare** insofar as they are affected by the continued *occupancy* and maintenance of structures and *premises*. Existing structures and *premises* that do not comply with these provisions shall be altered or repaired to provide a minimum level of health and safety as required herein.

2015 IPMC § 101.3 (italic emphasis in original; bold emphasis added).[17]

Correspondingly, Chapter 238 of the City Code expressed its intent and purpose, in pertinent part:

WHEREAS[,] [] in 2009[,] City Council . . . found that it was necessary to safeguard the safety, health and welfare of the public by assuring that the [c]ode [o]fficials of the City . . . were authorized to enter structures and premises within the City to perform inspections thereof and to perform their duties under the [City Code]; and

WHEREAS[,] the City Council . . . found that there was a growing concern within the City with the failure of some landowners to properly maintain residential rental properties; and

WHEREAS, the City Council . . . found that to safeguard the safety, health and welfare of its citizens, and to encourage [o]wners . . . of rental housing to improve and maintain the quality of such housing, it was necessary to establish a systematic interior inspection, registration[,]

---

[16] codes.iccsafe.org/content/IPMC2015/chapter-1-scope-and-administration (last visited Sept. 5, 2023).

[17] codes.iccsafe.org/content/IPMC2015/chapter-1-scope-and-administration (last visited Sept. 5, 2023).

and licensing program for residential rental properties, their [o]ccupants and their operators; and

Chapter 238, Appellant's Production of Documents Ex. B at 1.

Clearly, Inspector/the City had the discretion to interpret the City Code in a manner that protects the Property's habitability and the safety of the City's residents. Section 104.2 of the 2015 IPMC expressly authorized City officials to either conduct roof inspections themselves, *or* to have the property owners obtain the inspections and submit Roof Certifications. Where, as here, the record supported Inspector's concern for the roof's compliance with IPMC Section 304.7, and he lacked the necessary access to ensure that compliance, Inspector properly required Appellant to obtain a Roof Certification.

The trial court concluded:

> Inspector testified that he could not verify whether the overgrown tree created damage to the Property as [] Inspector did not have the ability to gain access to the roof and Appellant was not present to answer the door for [] Inspector to look inside; thus, [] Inspector testified that, in situations where the damage cannot be verified, a [R]oof [C]ertification is required. Therefore, because [] Inspector was unable to verify whether the overgrown tree created damage to the roof, it was not an unlawful delegation of authority to require Appellant to provide a [R]oof [C]ertification as required by City Code.

Trial Ct. 1925(a) Op. at 5-6 (R.R. at 34a-35a) (footnote omitted). This Court discerns no error in the trial court's conclusion.

Notwithstanding, Appellant relies on the last sentence of Section 104.2 of the 2015 IPMC to support his argument that Inspector could only require a Roof Certification for "unusual technical issues." 2015 IPMC § 104.2. The City responds that the circumstances herein presented unusual technical issues. This Court's plain reading of that text reflects *Inspector's/the City's* authority to retain an expert on the *City's* behalf, with the *City's* approval (presumably, because it would be at the City's

12

expense) when unusual technical issues related to the City Code so warrant.  *See* 2015 IPMC § 104.2.  That was not the case here.  Because the first sentence of Section 104.2 of the 2015 IPMC afforded Inspector the authority to require Appellant to obtain a Roof Certification, Appellant's (and the City's) reliance on the last sentence of Section 104.2 of the 2015 IPMC was misplaced in this instance.

## Conclusion

Based on the foregoing, the trial court's order is affirmed.


_____
ANNE E. COVEY, Judge

13

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania     :
                                             :
               v.                   :
                                             :
Central Penn Equity Trust,         :     No. 424 C.D. 2022
               Appellant         :

## O R D E R

AND NOW, this 6th day of September, 2023, the Lancaster County Common Pleas Court's March 29, 2022 order is affirmed.

_____
ANNE E. COVEY, Judge